Civil action to recover damages for personal injury resulting from an alleged unlawful and malicious assault and battery, and for punitive damages in connection therewith.
On former appeal by defendants from judgment overruling demurrer to the complaint of plaintiff at Spring Term, 1948, opinion sustaining the ruling of lower court, was handed down on 25 February, 1948. *Page 291 
Plaintiff alleges in her complaint that she and defendant, Felton F. Garrett, are husband and wife, living in a state of separation; that on the night of 10 September, 1947, "the defendants, acting in concert and with joint and common purpose and intent, wrongfully, unlawfully, and maliciously" went to the residence of plaintiff "where the defendant Fesler being thereto aided and assisted by the defendant Felton F. Garrett secretly and without warning maliciously and forcibly seized this plaintiff and dragged her from the house" out to a point beyond the lights where defendant Garrett was hiding and lying in wait; that then both defendants forcibly carried her into the street where they publicly assaulted and beat her to the extent that she suffered lacerations, abrasions, bruises, contusions and other wounds, all to her "great indignity and humiliation." And after alleging more in detail the circumstances of the assault and her injuries, plaintiff prays judgment for both actual and punitive damages.
Defendant Felton F. Garrett, answering the complaint of plaintiff, admits that she is his wife; that they were living separate and apart; and "that plaintiff was slightly injured," he avers, "as the result of a fight in which she engaged with the defendant Lois Fesler," but he denies all other allegations of the complaint, and particularly denies that he "assaulted or injured the plaintiff in any way," or that he "cursed or threatened her in any way." And for further defense and answer this defendant, Felton F. Garrett, avers that on 8 March, 1948, "plaintiff, for a valuable consideration, executed and delivered to this defendant a full, final and complete release and discharge from any and all claims, demands and causes of action which she might have against him, particularly including the claim alleged in the above entitled action, which said release was in full and final settlement and satisfaction of the above entitled proceeding, and all claims which plaintiff had or might make therein against this defendant, which said release is hereby expressly pleaded in bar of plaintiff's claim herein."
And the defendant Lois Fesler, in her answer to allegations of plaintiff's complaint, admits that plaintiff is the wife of defendant Felton F. Garrett, and that plaintiff and defendant Garrett, for some time prior to 10 September, 1947, were living separate and apart; but she denies all other allegations of the complaint. However, for a further answer and defense, this defendant, Lois Fesler, avers in substance: That plaintiff had annoyed her in variously enumerated ways; that she had warned plaintiff repeatedly to stay away from her, Fesler's, home; that in spite of these warnings plaintiff "broke into" and "ransacked" her home on 10 September, 1947, while she was away; that, in connection with this incident, she warned plaintiff again to stay away from her home, and "plaintiff and this defendant became engaged in a fight, during which *Page 292 
the defendant slapped the plaintiff several times"; and "that plaintiff's injuries were caused by her own misconduct in annoying, harassing and attempting to injure and even kill this defendant." And defendant Fesler further pleads the release, referred to above as pleaded in defendant Garrett's answer, as a bar of plaintiff's claim herein.
Plaintiff, in reply, admits that on or about 8 March, 1948, she signed some sort of paper writing, but she expressly denies that the force and effect of it is to release defendants, or either of them, from liability to her upon the cause of action set out in her complaint, and she demands production of it. And, in this connection, she further alleges in detail that the alleged release and discharge was without consideration and therefore null and void; that her signature thereto was deceitfully and wrongfully procured by the false and fraudulent conduct, machinations, statements and representations of one or both of the defendants, acting through their agents, employees and emissaries, T. A. Harris and Kenneth Dickey; that as a part of said deceitful scheme, the defendants, and especially defendant Garrett, took advantage of a weakness of plaintiff for alcoholic drink, of which he, at least, knew, and of the mental distress under which she was then suffering; that in connection therewith defendant Garrett, her husband, and his codefendant well knew that plaintiff not only had been subjected to the indignity of wife beating, as alleged in her complaint, but of his undue attention and association with other women, under such circumstances as to bring shame and humiliation to her; that knowing all these things, and in a desire to further embarrass and humiliate her and to defraud her of her rights in this action he wrongfully connived and contrived with one who is known in Elizabeth City as T. A. Harris, to obtain from her by devious means the release which he has pleaded in his answer in this cause; that as by the circumstances she is informed and believes he, either directly or indirectly, caused the said T. A. Harris, who is not a resident of Elizabeth City but is an occasional visitor, holding himself out to be a real estate operator of consequence, to call upon plaintiff for the ostensible purpose of selling for her a small piece of land owned by her; that in consequence of what she now recognizes from all the circumstances to be a deceitful scheme to deprive her of her rights in this action, and still acting as the agent of one or both of the defendants, the said T. A. Harris continued his calls upon and attention to plaintiff; that as one of the devices to carry out said wrongful purpose he. Harris, introduced her to one Kenneth Dickey, a personable man who plaintiff is now informed and believes was likewise, either mediately or immediately, in the employ of the defendants, or one of them, and a member of said conspiracy; that thereupon said Dickey with the assistance of Harris, and, as plaintiff is informed and believes, with the knowledge and connivance of the defendants, *Page 293 
rapidly began to profess to plaintiff an ardent attachment and affection and to provide her with strong drink; that, in part, induced by the effect of the drinks, and her lonely, distressed and forsaken condition in life, she was led by his repeated professions to believe them to be true and to accept them as sincere; that as a part of said deceitful scheme and purpose they represented to plaintiff and induced her to believe that she should obtain a divorce from her husband, and be free to marry again, and that she should make a trip to Florida to improve her health and mind and there to give further consideration to the matter of divorce; that because of these blandishments and persuasions, coupled with unhappy state of mind and health, she consented to go, and did go, to Florida; that while she was visiting in Florida, Dickey again visited her and continued his assurances of affection, as well as representing to her that he was a man of wealth and affluence, well able to provide her with comforts and devotion if she would become his wife, but insisted it was first necessary that she dispose of the lawsuit against her husband, F. F. Garrett, being supported therein by Harris; that a few days after her return to Elizabeth City, to wit, on 8 March, 1948, when she was perturbed in arranging a submission to a charge of driving an automobile under the influence of intoxicants pending in Superior Court of Camden County, the said Dickey and Harris appeared, knowing of her mental distress, and asked her to have lunch with them; that while at lunch they, as was their custom, produced a bottle of liquor and poured her ample portions which she drank at their invitation; that later and while plaintiff's mental faculties were impaired by drinking, the men produced a paper writing which they, and especially Dickey, who had gained her confidence as aforesaid, told her was a paper disposing and settling her suit against her husband much to her advantage, and advised and insisted that she sign it; that by reason of the confidence which they had gained, the mental distress incident to the case in Camden, the effect of the drinks they had given her, the false statements and assurances they reiterated, and her reliance thereon, she was fraudulently and deceitfully induced to set her name to said paper, not knowing at that time, or being in mental condition to know and comprehend, the meaning, force and effect thereof; that her signature to said paper writing, the one pleaded in the answers in this cause, was procured by mistake on her part, induced by the aforesaid fraud on the part of defendants and their agents; that defendants knew of the wrongful acts and doings of said agents, fully ratified and accepted same and have claimed and still claim the benefits thereof; and that, later in the same day, said paper was delivered, she is informed and believes, to defendant F. F. Garrett, who sent to her by his agents her watch and ring and some figurines, all of which she owned already but which he had caused to be *Page 294 
withheld from her for several months, — that he sent her nothing more. Thereupon she prays that the paper writing be declared null and void; that defendants be required to surrender it for cancellation; and that she recover the relief prayed in her complaint.
When the case came for trial in Superior Court both plaintiff and defendants offered evidence tending to support their respective contentions. (In the evidence Dickey is referred to as Dicks.)
And in the course of offering evidence, defendants offered the release prepared for Garrett by his lawyer and given to him for use, and pleaded by defendants in bar of plaintiff's claim herein, photostatic copies of which appear as part of record on this appeal — in deleted form as follows:
"In consideration of the payment of the sum of $............., to me paid . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . "Signed, sealed and delivered this ........ day of ............, 1948. .................................. (Seal)
"STATE OF:
CITY OF:
"I, ................., a Notary Public or Clerk of Superior Court of the aforesaid county and state . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Upon the examination of the said WILMA T. GARRETT, separate and apart from her husband, and from an examination of said release, and from other knowledge and investigation by the undersigned, it appears to my satisfaction that the said WILMA T. GARRETT freely executed said contract and freely consented thereto at the time of her separate examination, and that the same is not unreasonable or injurious to her, and I so find the facts to be and so adjudged.
 "Witness my hand and seal this ........... day of ..........., 1948. .......................................... Notary Public or Clerk Superior Court
 "My commission expires: (Seal Here)"
The blanks shown are filled in as follows: The consideration "$500.00" is shown in type. The date is in handwriting "8th" "Mar 8." In handwriting is "Wilma T. Garrett" on blank line before the word "(Seal)." The blanks after "State of" and "City of" are not filled in. After the letter "I" in the certificate is the name of "Wrenn H. Mercer," which *Page 295 
also appears in blank above words "Notary Public or Clerk of Superior Court." The date of the certificate is in handwriting "8th" "March."
Indented seal of "Wrenn H. Mercer Notary Public Pasquotank County, N.C. ," is shown, followed by date of expiration written in.
Motions of defendants for judgment as of nonsuit entered when plaintiff first rested her case, and renewed at the close of all the evidence were overruled, and each time they except.
The case was thereupon submitted to the jury upon these issues which the jury answered as shown:
"1. Did the defendant Lois Fesler assault and beat the plaintiff, as alleged in the Complaint? Answer: Yes.
"2. Did the defendant Felton F. Garrett assault and beat the plaintiff, as alleged in the Complaint? Answer: Yes.
"3. Did the plaintiff execute and deliver to the defendant Felton F. Garrett a paper writing purporting to discharge the said Garrett from any and all liability under this cause of action, as alleged in the Answer? Answer: Yes.
"4. If so, was the execution and delivery of said paper writing procured by the defendant Garrett by means of undue influence or fraud, as alleged in the Reply? Answer: Yes.
"5. Was the execution and delivery of said paper writing procured without consideration as alleged in the Reply? Answer: Yes.
"6. What amount of actual damages, if any, is the plaintiff entitled to recover of the defendants, or either of them? Answer: $20,000.
"7. What amount of punitive damages, if any, is the plaintiff entitled to recover of the defendant Felton F. Garrett? Answer: $5,000.
"8. What amount of punitive damages, if any, is the plaintiff entitled to recover of the defendant Lois Fesler? Answer: $5,000."
Defendants requested peremptory instruction in their favor in respect to issues 3, 4 and 5. The 4th and 5th were refused, and they duly excepted.
Motion of defendant to set aside the verdict as being excessive was denied. Exception.
From judgment for plaintiff in accordance with the verdict of the jury, defendants appeal to Supreme Court, and assign error.
The first two questions, and the ones mainly debated on this appeal, challenge the rulings of the court in overruling defendants' motions for judgment as of nonsuit, and in refusing to give *Page 296 
peremptory instructions as requested by them on the fourth and fifth issues, which appellants say are susceptible of collective argument.
In brief of appellants, in stating the facts, it is conceded that "the evidence is uncontradicted that Miss Fesler both slapped and pulled or dragged the plaintiff to the ground repeatedly during the brief period of the altercation," and that "the evidence is conflicting as to whether defendant Garrett participated in the assault." And no argument is advanced by them that judgment as of nonsuit should have been allowed on account of insufficient evidence to take the case to the jury on the first two issues. But the debate here is around the question as to whether there is sufficient evidence to support plaintiff's attack upon the release pleaded in the answers, — that is, to support her allegations that its execution by her was due to a mistake, induced by fraud on the part of defendant Garrett.
In this connection when considering defendants' demurrer to the evidence entered at the close of all the evidence, that is, motion for judgment as in case of nonsuit entered at that stage of the trial, pursuant to provisions of G.S., 1-183, as well as peremptory instructions requested by them, the evidence is to be taken in the light most favorable to plaintiff, and she is to be given the benefit of every fact or inference of fact pertaining to the issues involved, which may be reasonably deduced from the evidence. Nash v. Royster, 189 N.C. 408, 127 S.E. 356; Cole v. R. R.,211 N.C. 591, 191 S.E. 353.
Applying this rule to the evidence shown in the record on this appeal, we are of opinion that the evidence is sufficient to take the case to the jury, and to support an affirmative answer to the fourth and fifth issues. The allegations of plaintiff in her reply are sufficient to raise these issues. These allegations constitute the framework, and the evidence favorable to her is sufficient to justify the allegations and to give form to the case. A recital of the evidence would be repetitious, and would serve no useful purpose. Indeed, as stated in Cole v. R. R., supra, "It should be remembered the testimony is in sharp conflict, and the jury has accepted the plaintiff's version of the matter."
"Fraud, actual and constructive, is so multiform as to admit of no rules or definitions. `It is, indeed, a part of equity doctrine not to define it,' says Lord Hardwicke, `lest the craft of men should find a way of committing fraud which might escape such a rule or definition.' Equity, therefore, will not permit `annihilation by definition,' but it leaves the way open to punish frauds and to redress wrongs perpetrated by means of them in whatever form they may appear. The presence of fraud, when resorted to by an adroit and crafty person, is at times exceedingly difficult to detect. Indeed, the more skillful and cunning the accused, the less plainly defined are the badges which usually denote it. Under *Page 297 
such conditions, the inferences legitimately deducible from all the surrounding circumstances furnish, in the absence of direct evidence, and often in the teeth of positive testimony to the contrary, ample ground for concluding that fraud has been resorted to and practiced by one or more of the parties," Stacy, J., in Oil Co. v. Hunt, 187 N.C. 157,121 S.E. 184. See also S. v. Lea, 203 N.C. 13, at p. 30, 164 S.E. 737, as applied to conspiracies. The principles there stated are applicable to the present action.
Appellants contend further that plaintiff's testimony pertaining to failure of consideration cannot obtain for that the examining or certifying officer taking the acknowledgment of plaintiff to the release complied with the provisions of G.S., 52-12. However, the jury having found in answer to the fourth issue that the release was obtained by fraud, there is no contract between the husband and wife to which the provisions of G.S.,52-12, could apply.
Appellants further assign as error the failure of the court to allow their motion to set aside the verdict for excessiveness may not be sustained. Such motion is addressed to the sound discretion of the trial court, and is not reviewable on the showing here made. Edmunds v. Allen,ante, 250, and cases cited.
All other assignments of error in support of which argument is made in brief of appellants, have been given due consideration, and prejudicial error is not made to appear.
Therefore, in the trial below, there is
No error.