TRADEWINDS AIRLINES, INC., TRADEWINDS HOLDINGS, INC., AND COREOLIS HOLDINGS, INC., THIRD-PARTY PLAINTIFFS v. C-S AVIATION SERVICES, THIRD-PARTY DEFENDANT

No. COA11-739

(Filed 18 September 2012)

**1. Process and Service—personal jurisdiction—registered agent—certified mail**

The trial court had personal jurisdiction over third-party defendant C-S Aviation Services (CSA). Service of process was properly obtained upon CSA by serving its registered agent by certified mail, return receipt requested, in accordance with N.C.G.S. § 1A-1, Rule 4(j)(6)c.

**2. Unfair Trade Practices—fraud—default judgment**

The trial court did not err by concluding the amended third-party complaint alleged claims for fraud and unfair and deceptive trade practices, and that the default judgment should stand.

**3. Unfair Trade Practices—treble damages—default judgment**

The trial court did not err by concluding that the third-party complaint adequately alleged an unfair and deceptive trade practice under N.C.G.S. § 75-1.1 that supported the trebling of damages in the default judgment.

**4. Unfair Trade Practices—fraudulent inducement—broad discretion awarding damages**

The trial court's award of damages in a fraudulent inducement and unfair trade practices case did not violate N.C.G.S. § 1A-1, Rule 54(c). The trial court had broad discretion to award

damages to make the third-party plaintiff whole and to prevent third-party defendant from profiting from its fraudulent conduct.

## 5. Damages and Remedies—fraudulent inducement—unfair trade practices—calculation of damages

The trial court's final judgment in a fraudulent inducement and unfair trade practices case did not misapply the law of North Carolina concerning the calculation of damages. The court sought to make plaintiff whole and to prevent defendant from profiting from its fraudulent conduct.

## 6. Damages and Remedies—additional discovery—extensive hearing

The trial court did not err in a fraudulent inducement and unfair trade practices case by awarding damages that were allegedly inequitable and unsupported by the evidence. The trial court set aside the original default judgment in favor of Airlines and subsequently allowed discovery before conducting an extensive hearing on damages.

Appeal by third-party defendant, C-S Aviation Services, Inc., from the judgment entered on 26 July 2010 and orders entered on 16 February 2011 and 4 March 2011 by Judge Ben F. Tennille in the North Carolina Business Court. Heard in the Court of Appeals 15 November 2011.

*Tuggle, Duggins & Meschan, P.A., by J. Nathan Duggins III, for third-party plaintiff-appellee TradeWinds Airlines, Inc.*

*Smith Moore Leatherwood LLP, by Larry B. Sitton and James G. Exum, Jr., for third-party plaintiffs-appellees TradeWinds Holdings, Inc. & Coreolis Holdings, Inc.*

*Womble Carlyle Sandridge & Rice, PLLC, by Burley B. Mitchell, Jr., and Ellis & Winters LLP, by Paul K. Sun, Jr., for third-party defendant-appellant.*

STEELMAN, Judge.

The trial court had personal jurisdiction over C-S Aviation Services (CSA). The third-party complaint stated a claim for fraud and unfair and deceptive trade practices. The trial court's conclusions do not justify setting aside the default judgment. The trial court did not abuse its discretion in declining to set aside the default judgment.

## I.  Factual and Procedural History

TradeWinds Airlines, Inc. (Airlines) is an air freight carrier. TradeWinds Holdings, Inc. (Holdings) was the sole shareholder of Airlines when this litigation began. CSA initially leased aircraft to Airlines. However, the aircraft leases were amended and restated so that Deutsche Bank Trust Company was the administrative agent for a syndicate of lenders that owned the aircraft leased to Airlines. CSA became the aircraft manager for the lessors of the aircraft.

In December 2001, Coreolis Holdings, Inc. (Coreolis) purchased the outstanding stock of Holdings. In September 2003, Deutsche notified Airlines that it was in default under the terms of the lease and threatened to seize the aircraft.

Deutsche filed this action against Airlines, Holdings, and Coreolis, (collectively TradeWinds Group) seeking possession of the aircraft and damages on 14 November 2003. TradeWinds Group filed a third-party complaint against CSA alleging fraudulent inducement, breach of contract, and unfair and deceptive trade practices on 4 February 2004. TradeWinds Group served CSA by sending copies of the summons and the third-party complaint to CSA's registered agent, Corporation Trust Company.

On 19 August 2004, the trial court entered default against CSA for failing to respond to TradeWinds Group's summons and third-party complaint. This entry of default was as to the claims asserted by the entire TradeWinds Group against CSA. Deutsche and TradeWinds Group subsequently reached a settlement, which resulted in the trial court dismissing the remaining claims between those parties on 29 December 2006. Excluded from the dismissal was TradeWinds Group's third-party complaint against CSA. On 27 February 2007, the trial court made a second entry of default against CSA.

The trial court closed its file on 17 April 2007. In the spring of 2008, Airlines became aware of the possibility of piercing the corporate veil to reach the principals of CSA.[1] Acting alone, Airlines moved for default judgment against CSA on 14 April 2008. CSA failed to appear at a hearing on the motion for default judgment on 19 June 2008. On 20 June 2008, Airlines filed an action in the United States

---

1. On 9 August 2006, the United States District Court for the Southern District of New York denied the individual defendants' motion for summary judgment on piercing the corporate veil claims in the case of *Jet Star Enterprises, Ltd. v. Soros*, 2006 WL 2270375 (S.D.N.Y. Aug. 9, 2006).

**TRADEWINDS AIRLINES, INC. v. C-S AVIATION SERVS.**

[222 N.C. App. 834 (2012)]

District Court for the Southern District of New York, seeking to pierce the corporate veil to reach CSA's principals. *TradeWinds Airlines, Inc. v. Soros*, 2009 WL 435298 (S.D.N.Y. Feb. 23, 2009).[2]

On 7 July 2008, the trial court entered default judgment against CSA, awarding Airlines damages in the amount of $16,326,528.94. The trial court then trebled the damages pursuant to Chapter 75 and added interest, making the total judgment $54,867,872.49. On 25 July 2008, Airlines filed a petition for bankruptcy in the Southern District of Florida. On 31 July 2008, the trial court again closed its file in this matter.

On 27 August 2008, CSA moved to set aside the entry of default and the default judgment. On 7 January 2009, Coreolis and Holdings also filed a motion to set aside Airlines' default judgment. Coreolis and Holdings subsequently filed motions for entry of default judgment against CSA on 6 March 2009. On 20 May 2009, the trial court entered an order staying all pending motions until the stay arising out of Airlines' pending bankruptcy in Florida was lifted. Following the lifting of the bankruptcy stay, on 21 September 2009, the trial court set aside the 7 July 2008 default judgment in favor of Airlines, but declined to set aside the underlying entry of default against CSA.[3] The trial court gave the parties 140 days to conduct discovery on damages and directed that a hearing on damages be held on 10 May 2010.

On 26 July 2010, the trial court entered judgment awarding Coreolis and Holdings damages in the amount of $11,544,000.00, subject to trebling and interest against CSA. The judgment also awarded Airlines damages in the amount of $16,111,403.00, subject to trebling and interest against CSA. A separate order was entered on 28 July 2010, denying TradeWinds Groups' motion for attorneys' fees. On 16 February 2011, the trial court denied CSA's motion to amend the judg-

---

2. *TradeWinds Airlines, Inc. v. Soros*, 2009 U.S. Dist. LEXIS 40689; *TradeWinds Airlines, Inc. v. Soros*, 2009 U.S. Dist. LEXIS 42854; *TradeWinds Airlines, Inc. v. Soros*, 2011 U.S. Dist. LEXIS 9432; *TradeWinds Airlines, Inc. v. Soros*, 2011 U.S. Dist. LEXIS 25543; *TradeWinds Airlines, Inc. v. Soros*, 2011 U.S. Dist. LEXIS 120173; *TradeWinds Airlines, Inc. v. Soros*, 2012 U.S. Dist. LEXIS 39459.

3. In setting aside the default judgment, it appears that the trial court was particularly concerned with the fact that the default judgment only ran in favor of Airlines, did not run in favor of the entire TradeWinds Group, and created the problems in moving forward with the case. The trial court found that CSA had actual notice of TradeWinds Group's third-party complaint and that CSA's "failure to respond to the summons appears to be intentional. It may have have relied on the belief that any judgment against it would be worthless."

ment and to set aside the judgment and the underlying default. On 4 March 2011, the trial court issued an order clarifying its 16 February 2011 order.

CSA appeals from the judgment of 26 July 2010 and the orders entered on 16 February 2011 and 4 March 2011. On 12 July 2011, this Court granted appellant's motion to extend the word count for appellant's brief to 12,500 words.

## II.  Personal Jurisdiction

**[1]**  In its first argument, CSA contends that the trial court lacked personal jurisdiction over CSA because it was not properly served with the third-party summons and complaint. CSA further argues that there was no evidence that CSA had actual notice of the third-party action. We disagree.

To obtain personal jurisdiction over a defendant, the issuance of the summons and service of process must comply with a statutorily specified method. *Bentley v. Watauga Bldg. Supply Inc.*, 145 N.C. App. 460, 461, 549 S.E.2d 924, 925 (2001). "In any action commenced in a court of this State[,]" N.C.R. Civ. P. 4(j) provides that "the manner of service of process *within or without* the State shall be as follows[.]" N.C.R. Civ. P. 4(j) (2011) (emphasis added).[4] N.C.R. Civ. P. 4(j)(6)c authorizes service upon a corporation by "mailing a copy of the summons and of the complaint, registered or certified mail, return receipt requested, addressed to the officer, director or agent to be served[.]" N.C.R. Civ. P. 4(j)(6)c.

CSA contends that its registered agent, Corporation Trust Company, was not authorized by appointment or by law to accept process by certified mail on its behalf. CSA further argues that the authority of a Delaware corporation's registered agent is governed by Delaware law.

CSA contends that out-of-state service of process is controlled "by the laws of the state where the service will occur[,]" quoting *B. Kelley Enterprises, Inc. v. Vitacost.com*, _____ N.C. App. _____, _____ 710 S.E.2d 334, 338 (2011). In that case, the plaintiff filed an action in the Superior Court of Forsyth County, seeking to collect monies under a rental agreement. The defendant pled a judgment previously entered in the court of Palm Beach County, Florida as *res judicata*

---

4. N.C.R. Civ. P. 4 was amended in 2005, 2008, and 2011. 2005 N.C. Sess. Laws ch. 221, §§ 1, 2; 2008 N.C. Sess. Laws, ch. 36, §§ 1-3; 2011 N.C. Sess. Laws, ch. 332, § 3.1. Subsection 4(j)(6)c was not modified.

and moved for judgment on the pleadings. The plaintiff in the North Carolina action contended that the Florida judgment was not valid, based upon a lack of proper service upon it in the Florida case. To determine whether the courts of North Carolina were bound by the Florida judgment, this Court examined whether the Florida court had personal jurisdiction over the plaintiff. This required the Court to apply Florida law concerning service of process to determine whether the plaintiff had been properly served.

CSA selectively quoted from our decision in *Kelley*. The entire sentence reads: "Therefore, it appears that Florida's statutes governing service of process require out-of-state service to be carried out by persons authorized to conduct such service by the laws of the state where the service will occur." *Kelley*, _____ N.C. App. at _____, 710 S.E.2d at 338.

In *Kelley*, this Court was construing Florida law to determine whether proper service had been made upon the plaintiff. We were not construing North Carolina law or N.C.R. Civ. P. 4(j)(6)c. Thus, *Kelley* is not controlling in this case.

The trial court found that TradeWinds Group sent copies of the third-party summons and complaint to CSA's registered agent by certified mail, return receipt requested. Corporation Trust Company received these documents on 22 March 2004. These findings are supported by competent evidence in the record: the affidavit of service, the third-party summons addressed to CSA showing Corporation Trust Company as its registered agent, and the executed return receipt. CSA does not challenge proof of service under N.C. Gen. Stat. § 1-75.10.

Under North Carolina law, service can be effected through a registered agent by means of certified mail, return receipt requested, addressed to the agent to be served. N.C.R. Civ. P. 4(j)(6)c. CSA does not dispute that Corporation Trust Company was its registered agent.

CSA argues that under Delaware law, Corporation Trust Company was not authorized by appointment or by law to accept process by certified mail on its behalf, citing Del. Code Ann., tit. 8, § 321(a) (requiring personal service upon the officer, director or registered agent of the corporation). However, the manner of service of process is a matter of procedural law, not substantive law, and is controlled by the law of the forum state, North Carolina. *Kelley*, _____ N.C. App. _____, 710 S.E.2d at 337; *Freeman v. Pacific Life Ins. Co.*, 156 N.C. App. 583, 587, 577 S.E.2d 184, 187 (2003). In this case, service of

process was properly obtained upon CSA by serving its registered agent by certified mail, return receipt requested, in accordance with N.C.R. Civ. P. 4(j)(6)c.

Since we have held that service of process upon CSA was proper, we do not reach CSA's argument that it did not have actual notice of the third-party complaint.

These arguments are without merit.

### III.  Law of Fraudulent Inducement

#### A.  Judgment of Trial Court

The trial court held that the Amended Third-Party Complaint adequately alleged claims for fraudulent inducement and unfair and deceptive trade practices. Based upon these claims, the trial court awarded Coreolis and Holdings the sum of $11,544,000.00 which represented the amount of money lost by those two entities as a result of the fraudulent inducement by CSA. The trial court rejected the damages sought by Coreolis and Holdings for loss of value of their investment in Airlines. The trial court also awarded Airlines the sum of $16,111,403.00. This sum was composed of the following: (1) repair cost for engines, $2,693,403.00; (2) lease payment differential, $6,216,000.00; and (3) other damages from engine failures, $7,202,000.00. The trial court held that Airlines failed to prove that its losses attributable to the lease of Canadian aircraft were caused by the fraudulent conduct of CSA. Both awards were held to be subject to trebling and the addition of interest, according to law.

#### B.  Elements of Fraud in the Inducement

"The essential elements of fraud [in the inducement] are: (1) False representation or concealment of a material fact, (2) reasonably calculated to deceive, (3) made with intent to deceive, (4) which does in fact deceive, (5) resulting in damage to the injured party." *Media Network, Inc. v. Long Haymes Carr, Inc.*, 197 N.C. App. 433, 453, 678 S.E.2d 671, 684 (2009) (alteration in original).

#### C.  Relationship Between Claims for Fraud in the Inducement and Unfair and Deceptive Trade Practices

"Proof of fraud in the inducement necessarily constitutes a violation of Chapter 75 and shifts the burden of proof from the plaintiff to the defendant, which must then prove that it is exempt from Chapter 75's provisions." *Id.*

## D.  Measure of Damages for Fraud in the Inducement and Unfair and Deceptive Trade Practices

### 1.  Fraud in the Inducement

"The measure of damages for fraud in the inducement of a contract is the difference between the value of what was received and the value of what was promised, *Horne v. Cloninger*, 256 N.C. 102, 123 S.E.2d 112 (1961), and is potentially trebled by N.C.G.S. § 75-16." *River Birch Associates v. City of Raleigh*, 326 N.C. 100, 130, 388 S.E.2d 538, 556 (1990). In *Godfrey v. Res-Care, Inc.*, 165 N.C. App. 68, 598 S.E.2d 396 (2004), this Court approved a jury instruction in a fraud case that stated: "Damages are compensation in money, in an amount so far as is possible, to restore a respective plaintiff to his or her original condition or position[.]" *Godfrey*, 165 N.C. App. at 78-79, 598 S.E.2d at 404. We held that "[i]t is elementary that a plaintiff in a fraud suit has a right to recover an amount in damages which will put him in the same position as if the fraud had not been practiced on him." *Godfrey*, 165 N.C. App. at 79, 598 S.E.2d at 404 (internal quotation marks omitted). "In appropriate cases upon appropriate proof, benefit-of-bargain and consequential damages should be allowed. When fraud is proved, the courts are astute to give plaintiff a complete remedy and are careful to avoid situations in which the defendant may benefit from his fraud." Charles E. Daye & Mark W. Morris, *North Carolina Law of Torts* § 27.36 (2nd ed. 1999).

### 2.  Unfair and Deceptive Trade Practices

An action for unfair or deceptive acts or practices is "the creation of . . . statute. It is, therefore, sui generis. It is neither wholly tortious nor wholly contractual in nature . . . ." *Slaney v. Westwood Auto, Inc.*, 366 Mass. 688, 704, 322 N.E.2d 768, 779 (1975). While fraudulent behavior may evoke the action, it is not an action for fraud. *Holley v. Coggin Pontiac*, 43 N.C. App. 229, 241, 259 S.E.2d 1, 9, *disc. rev. denied*, 298 N.C. 806, 261 S.E.2d 919 (1979).

*Bernard v. Central Carolina Truck Sales*, 68 N.C. App. 228, 230, 314 S.E.2d 582, 584 (1984) (alterations in original).

"The measure of damages used should further the purpose of awarding damages, which is to restore the victim to his original condition, to give back to him that which was lost as far as it may be done by compensation in money." *Bernard*, 68 N.C. App. at 233, 314 S.E.2d at 585 (internal quotation marks omitted). "Unfair and deceptive

trade practices and unfair competition claims are neither wholly tortious nor wholly contractual in nature and the measure of damages is broader than common law actions." *Sunbelt Rentals, Inc. v. Head & Engquist Equip., L.L.C.*, 174 N.C. App. 49, 61, 620 S.E.2d 222, 231 (2005).

The trebling of damages is automatic and is not in the discretion of the trial court. *Pinehurst, Inc. v. O'Leary Bros. Realty*, 79 N.C. App. 51, 61, 338 S.E.2d 918, 924-25 (1986).

### 3.　Conclusion on Damages

The measure of damages applicable to claims for fraud in the inducement and claims for unfair and deceptive trade practices is broad and remedial. Both encompass the concept of awarding such damages as will restore the plaintiff to his, her, or its original condition.

### E.　Effect of Claim of Fraud in the Inducement of a Contract upon Contractual Defenses

Where there is a claim for fraud in the inducement, defenses based upon the fraudulently induced contract will not bar the claim. In *Laundry Machinery Co. v. Skinner*, 225 N.C. 285, 34 S.E.2d 190 (1945), our Supreme Court held that parol evidence could be introduced in contravention of an integration clause in a contract, where there was fraud in the inducement, which "vitiates the contract." *Laundry Machinery Co.*, 225 N.C. at 288-89, 34 S.E.2d at 192-93; *accord Godfrey*, 165 N.C. App. 68, 598 S.E.2d 396.

### IV.　Sufficiency of Allegations Contained in Third-Party Complaint

**[2]** In its second argument, CSA contends that the allegations of the Amended Third-Party Complaint fail to allege a claim for fraud or for unfair and deceptive trade practices and that the default judgment cannot stand. We disagree.

### A.　Effect of Entry of Default

A default judgment admits only the allegations contained within the complaint, and a defendant may still show that the complaint is insufficient to warrant plaintiff's recovery. *Lowe's of Raleigh, Inc. v. Worlds*, 4 N.C. App. 293, 295, 166 S.E.2d 517, 518 (1969); *accord, Weft, Inc. v. G. C. Investment Associates*, 630 F.Supp. 1138, 1141 (E.D.N.C. 1986), *aff'd*, 822 F.2d 56 (4th Cir. 1987) (default not treated as absolute confession by defendant of plaintiff's right to recover and court must con-

sider whether plaintiff's allegations are sufficient to state claim for relief).

*Hunter v. Spaulding*, 97 N.C. App. 372, 377, 388 S.E.2d 630, 634 (1990).

"[W]here an entry of default has not been set aside and the complaint is sufficient to state a claim, the defendant in default may not defend its merits by asserting affirmative defenses in a motion for summary judgment." *Hartwell v. Mahan*, 153 N.C. App. 788, 792, 571 S.E.2d 252, 254 (2002).

B. Trial Court's Consideration of Allegations of Complaint

CSA contends that TradeWinds Group failed to plead their fraud claim with particularity; that they failed to allege reliance; and that certain damages were not alleged to have arisen from the fraud claims. CSA further argues that the trial court "assumed liability and proceeded directly to assessment of damages" without making a determination as to the sufficiency of the allegations contained in the complaint. In its final judgment, the trial court highlighted certain allegations contained in the Amended Third-Party Complaint, as follows:

78. In negotiating the Initial Leases and Restructured Leases, C-S Aviation, as agent for the third-party defendants, made numerous false statements to the TradeWinds Group. Among others [sic] things, C-S Aviation represented that: (1) the engines installed on the airplanes had been recently overhauled so that they could be utilized for a minimum of 1700 cycles before it was necessary to overhaul the engines again; and (2) the engines had been maintained properly, with routine service and proper replacement of all parts.

79. The TradeWinds Group reasonably relied on these representations when made. Had the TradeWinds Group known that it was receiving engines that would fail to meet guaranteed performance objectives, it never would have entered into any of the leases at issue. Moreover, had Coreolis known of the misrepresentations, it never would have purchased TradeWinds Holdings in December 2001.

80. C-S Aviation knew these representations were false when made. In fact, C-S Aviation, knowingly used inferior and substandard parts in its overhaul of the engines and C-S Aviation knew, as a result, that the engines could not possibly perform as promised.

38. When the engines began to fail, TradeWinds commenced an investigation into the possible reasons for the failures. During this investigation, TradeWinds discovered that C-S Aviation knew before the Aircraft were leased to TradeWinds that it was delivering inferior engines with the Aircraft. In particular, TradeWinds learned, contrary to explicit representations, that C-S Aviation had failed to properly overhaul the engines. Specifically, TradeWinds learned that C-S Aviation had used substandard and inferior parts during the purported overhaul, resulting in engines that would need significant maintenance well short of the 1700 cycles promised.

98. Among other things, C-S Aviation failed to pay interest on amounts deposited by TradeWinds for maintenance reserves, failed to release reserves to TradeWinds for eligible maintenance events, failed to provide engines that had been maintained to a level so they would perform for 1700 cycles before requiring an overhaul, and failed to provide TradeWinds with lease rates in accordance with TradeWinds' "most favored nation" status.

102. C-S Aviation, as agent for and the third-party defendants, has engaged in unfair and/or deceptive acts and practices as defined by the North Carolina Unfair and Deceptive Trade Practices Act, N.C.G.S. § 75-1.1 et seq. Among other things C-S Aviation engaged in the fraudulent inducement of the leases at issue.

The inclusion of these provisions from the Amended Third-Party Complaint in the final judgment demonstrate that the trial court did consider the bases of TradeWinds Group's claims for relief prior to making an award of damages. We further note that the trial court stated in its final judgment that it was awarding damages based upon the claims for fraudulent inducement and unfair and deceptive trade practice. In its order of 16 February 2011, the trial court made the following rulings: "3. The Third-Party Complaint adequately alleges an unfair and deceptive trade practice under N.C.G.S. § 75-1.1. 4. The Third-Party Complaint adequately alleges a claim for fraudulent inducement."

These rulings show that the trial court did consider the sufficiency of the allegations contained in the Amended Third-Party Complaint.

## C.  Sufficiency of Fraud Allegations

After reviewing all of the allegations contained in the Amended Third-Party Complaint, we hold that the allegations contained therein, while perhaps not a model of clarity, allege the claims for

fraud in the inducement with sufficient particularity to satisfy the requirements of N.C.R. Civ. P. 9(b). *Hunter*, 97 N.C. App. at 377, 388 S.E.2d at 634-35.

CSA further argues that TradeWinds Group failed as a matter of law to plead reliance, an essential element of fraud. It is clear that in Paragraph 79 of the Amended Third-Party Complaint (set forth above), TradeWinds Group expressly pled reliance. However, CSA contends that there was specific language contained in the leases attached to and incorporated into the Amended Third-Party Complaint where Airlines waived reliance upon any representations or warranties with respect to the leased aircraft. "When documents are attached to and incorporated into a complaint, they become part of the complaint and may be considered in connection with a Rule 12(b)(6) motion without converting it into a motion for summary judgment." *Schlieper v. Johnson*, 195 N.C. App. 257, 261, 672 S.E.2d 548, 551 (2009).

The issue is whether the lease provisions, treated as a portion of the complaint, serve to negate TradeWinds Group's assertion of reliance as contained in the Amended Third-Party Complaint. For several reasons, we hold that they do not negate or bar the assertion of reliance. First, as discussed in Section III E of this opinion, defenses based upon provisions contained in the fraudulently induced contract will not bar the fraud claim. Second, the assertion of the lease provisions in bar of the fraud in the inducement claims is the assertion of an affirmative defense by CSA, rather than an attack on the sufficiency of the Amended Third-Party Complaint. In *Schlieper*, the agreement attached to the complaint was between plaintiffs and defendants. In the instant case, the lease agreements attached to the Amended Third-Party Complaint were between Wells Fargo Bank, NorthWest, National Association and TradeWinds Airlines, Inc. While CSA was involved in the original leases that were fraudulently induced, it was neither a party to nor a signatory of the leases attached to the Amended Third-Party Complaint. CSA contends that it is entitled to the benefit of the disclaimers contained in the lease documents. However this would require a showing by CSA that it was an intended beneficiary of these provisions. This makes CSA's assertion of the lease provisions an affirmative defense that was required to be pled under N.C.R. Civ. P. 8(c), falling under the waiver, estoppel, or any other matter constituting an avoidance or affirmative defense. N.C.R. Civ. P. 8(c) (2011). Since CSA failed to answer the Amended Third-Party Complaint, it is barred from raising affirmative defenses. *See Hartwell, supra.*

## D.  Sufficiency of Damages Allegations

Following the entry of the trial court's final judgment on 26 July 2010, CSA filed a motion to amend the final judgment on 6 August 2010. This motion attacked the bases for the trial court's award of damages. In response to this motion, the trial court entered a second order, dated 16 February 2011. This order held that the Amended Third-Party Complaint adequately alleged claims for fraudulent inducement and unfair and deceptive trade practices; that the "lease payment differential" damages were the natural and logical result of CSA's actions and were not required to be pled as special damages under N.C.R. Civ. P. 9(g); and that all damages asserted by TradeWinds Group were properly pled.

CSA first contends that the Amended Third-Party Complaint failed to allege that the lease pricing dispute arose from any fraudulent inducement by CSA. The Amended Third-Party Complaint contained detailed allegations concerning whether Airlines was to receive "most favored nation" pricing under the aircraft leases in accordance with representations by and agreements with CSA. These allegations were incorporated into TradeWinds Group's claims for fraudulent inducement and unfair and deceptive trade practices. CSA further contends that these claims were not pled with sufficient particularity. We hold that the claims for damages arising out of the lease pricing dispute were pled with sufficient particularity to give CSA notice of them under N.C.R. Civ. P. 9(g). Further, as discussed in Section III D of this opinion, as to damages, the finder of fact in fraud in the inducement and unfair and deceptive trade practices cases is vested with broad authority to award damages sufficient to restore a plaintiff to its original condition. In the instant case, the Amended Third-Party Complaint contained sufficient allegations to support the award of damages stemming from the lease pricing dispute based upon either fraudulent inducement or unfair and deceptive trade practices.

CSA next contends that the leases attached to the Amended Third-Party Complaint do not contain "most favored nation" pricing terms and therefore no claim based upon such pricing can be maintained by TradeWinds Group. In Sections III E and IV C of this opinion, we have previously discussed CSA's attempt to plead the terms of the lease agreement in bar of the claims of TradeWinds Group for fraud in the inducement and unfair and deceptive trade practices. This argument is equally unavailing here.

Finally, CSA argues that the Amended Third-Party Complaint failed to allege that CSA fraudulently promised "most favored nation" pricing with the intent to not honor the promise. Paragraph 50 of the Amended Third-Party Complaint alleged: "Despite the promise of 'most favored nation' pricing, C-S Aviation knowingly leased planes to AeroUnion, one of TradeWinds' direct competitors, at lower lease rates. This destroyed TradeWinds' ability to compete for the routes for which the Canadian Planes were to be utilized."

The promise of "most favored nation" pricing followed by the leasing of planes to a competitor at a lower rate was sufficient to allege an intent not to honor the promise. "[T]he inferences legitimately deducible from all the surrounding circumstances furnish, in the absence of direct evidence, and often in the teeth of positive testimony to the contrary, ample ground for concluding that fraud has been resorted to and practiced by one or more of the parties." *Garrett v. Garrett*, 229 N.C. 290, 297, 49 S.E.2d 643, 647 (1948).[5]

### E. Sufficiency of Allegations of Unfair and Deceptive Trade Practices

CSA contends that the Amended Third-Party Complaint fails to state a claim upon which relief can be granted under N.C. Gen. Stat. § 75-1.1. Its first contention is that TradeWinds Group failed to allege actual reliance upon CSA's misrepresentations. This argument has already been addressed in Section IV C of this opinion in the context of the fraud claim. That analysis is equally applicable to this portion of CSA's argument.

CSA next argues that a plaintiff can pursue a misrepresentation claim under N.C. Gen. Stat. § 75-1.1 incident to contract-centered litigation only where the claim is identifiable and distinct from the breach of contract claim. In support of this assertion, CSA cites us to a federal case, *Broussard v. Meineke Discount Muffler Shops, Inc.*, 155 F.3d 331 (4th Cir. 1998). This argument appears to be a variant of the legal principles set forth in the North Carolina Supreme Court case of *Ports Authority v. Roofing Co.*, 294 N.C. 73, 240 S.E.2d 345 (1978). That case held that "[o]rdinarily, a breach of contract does not

---

5. We note that the trial court held that "TradeWinds has failed to prove that its losses attributable to the lease of Canadian aircraft in connection with its ICC Agreement were proximately caused by any fraudulent conduct of C-S Aviation as alleged in the Amended Third-Party Complaint." The fact that Airlines failed to prove this element of damages does not preclude the fraudulent conduct of CSA from supporting other damages that the trial court held were proven.

give rise to a tort action by the promisee against the promisor." *Ports Authority*, 294 N.C. at 81, 240 S.E.2d at 350. This legal principle is not controlling in this case for several reasons. First, an unfair trade practices action "is neither wholly tortious nor wholly contractual in nature[.]" *Bernard*, 68 N.C. App. at 230, 314 S.E.2d at 584. It is therefore not controlled by the four specific exceptions to the prohibition of bringing a tort claim in the context of a breach of contract action. *Ports Authority*, 294 N.C. at 82, 240 S.E.2d at 350-51. Second, our Courts have allowed a plaintiff to maintain a Chapter 75 action based upon fraudulent inducement of a contract. *Media Network*, 197 N.C. App. at 453, 678 S.E.2d at 684. Third, as discussed in Section III E of this opinion, where there is fraud in the inducement, defenses based upon the contract are not applicable.

Finally, CSA argues that any claim by Coreolis based upon allegations that it was fraudulently induced to purchase the stock of Holdings in December 2001 was barred since Chapter 75 does not apply to securities transactions. We hold that based upon the allegations of the Amended Third-Party Complaint, the claims of the TradeWinds Group are for fraudulent inducement and unfair trade practices, not for securities violations. As noted in Section III C of this opinion, "[p]roof of fraud in the inducement necessarily constitutes a violation of Chapter 75[.]" *Id.*

## V. Conclusion of Law

[3] In its third argument, CSA contends that the trial court's conclusion that "[t]he Third-Party Complaint adequately alleges an unfair and deceptive trade practice under N.C.G.S. § 75-1.1" is inadequate to support the trebling of damages in the default judgment. We disagree.

CSA argues that whether its conduct, as set forth in the Amended Third-Party Complaint, and admitted by virtue of the entry of default, constituted an unfair and deceptive trade practice under Chapter 75 was a legal question for the court, citing the case of *Durling v. King*, 146 N.C. App. 483, 554 S.E.2d 1 (2001). The trial court concluded that the allegations in the Amended Third-Party Complaint established a violation of Chapter 75 and that the damages awarded were subject to trebling pursuant to N.C. Gen. Stat. § 75-6.

Given that the allegations of the Amended Third-Party Complaint were deemed admitted by virtue of CSA's failure to answer the complaint, the findings contained in the trial court's final judgment of 26 July 2010 and the conclusions of law contained therein, as supplemented by the order of 16 February 2011, were sufficient to support

the trebling of damages under N.C. Gen. Stat. § 75-1.1. The trial court was not required to make extensive findings of fact and conclusions of law as argued by CSA. We further note, as discussed in Section III D2 of this opinion that the trebling of damages was automatic and not in the discretion of the trial court.

This argument is without merit.

## VI.  Damages

**[4]** In its fourth argument, CSA contends that the trial court's award of damages violated N.C.R. Civ. P. 54(c). We disagree.

### A.  Damages Awarded by Trial Court

The trial court awarded two sets of damages in this case. First, it awarded $11,544,000.00 to Holdings and Coreolis. This sum "represents the amount Coreolis and TradeWinds Holdings paid to settle the claims asserted against them and their wholly owned subsidiaries in the underlying Deutsche Bank litigation[.]" The trial court further held that Holdings and Coreolis lost this amount as a result of the fraudulent inducement by CSA. Second, the trial court awarded $16,111,403 to Airlines. The judgment held that these sums were subject to trebling and assessed interest "as provided by law."

### B.  CSA's Argument under Rule 54(c)

CSA argues that in entering a default judgment, after a trial on damages, the trial court was limited in what damages could be awarded by the relief that was sought in the complaint, under N.C.R. Civ. P. 54(c) (2011). N.C.R. Civ. P. 54(c), in relevant part, provides that "[a] judgment by default shall not be different in kind from or exceed in amount that prayed for in the demand for judgment." N.C.R. Civ. P. 54(c). Since the Amended Third-Party Complaint prayed for an amount "in excess of Ten Thousand Dollars ($10,000) to be determined at trial" and sought treble damages pursuant to Chapter 75, the only issue before us is whether the damages awarded differed "in kind from" those sought in the Amended Third-Party Complaint.

As in its prior arguments, CSA made a number of multi-faceted and multi-layered arguments in support of its contentions. We discuss each argument.

CSA first argues that the Amended Third-Party Complaint does not allege that CSA is liable for the lease rate dispute or for the amounts paid in settlement by TradeWinds Group to Deutsche Bank. CSA contends that the only claims asserted against it arise from the

fraudulent inducement related to premature engine failures. It further contends that nowhere in the complaint are there allegations pertaining to CSA's liability for amounts paid by TradeWinds Group to Deutsche Bank, that settlement having occurred over a year after the filing of the Amended Third-Party Complaint. As noted in Section III C of this opinion, the courts in fraudulent inducement and unfair and deceptive trade practices cases seek to make the plaintiff whole where fraud is proven and not to allow a defendant to benefit from its own fraud. The allegations of the Amended Third-Party Complaint, admitted as a result of CSA's default, establish fraud in the inducement by CSA as to the original aircraft lease and additional fraud with respect to the "most favored nation" pricing term. The damages awarded by the trial court were not different in kind from those alleged in the Amended Third-Party Complaint.

CSA next contends that the terms of the leases preclude consequential damages. As previously discussed in Section III E, where there is a claim for fraudulent inducement, defenses based upon the terms of the contract will not bar the claim.

CSA next argues that the settlement paid to Deutsche Bank constituted special, consequential damages that were not specifically pled in compliance with the provisions of N.C.R. Civ. P. 9(g). As noted in Section III D, the fact finder in fraud and unfair and deceptive trade practices claims has broad discretion in awarding damages to insure that the plaintiff is made whole and the wrongdoer does not profit from its conduct. As noted by the trial court in its order of 16 February 2011, the damages awarded "were the natural and logical result of C-S Aviation's actions and not required to be pled as special damages under N.C.R. Civ. P. 9(g)."

CSA next argues that the Amended Third-Party Complaint does not properly plead an action against CSA pursuant to N.C.R. Civ. P. 14. N.C.R. Civ. P. 14(a) (2011) provides that: "[A] defendant, as a third-party plaintiff, may cause a summons and complaint to be served upon a person not a party to the action who is or may be liable to him for all or part of the plaintiff's claim against him." N.C.R. Civ. P. 14(a).

We hold that the allegations of Paragraph 83 of the Amended Third-Party Complaint are sufficient to assert a N.C.R. Civ. P. 14 third-party action against CSA for damages that TradeWinds Group may be liable for to the plaintiff. "In addition, the TradeWinds Group is entitled to damages incurred as a result of the fraudulently induced leases, including damages to cover the cost of obtaining new air-craft leases."

Finally, CSA contends that the settlement payments by TradeWinds Group to Deutsche Bank were too remote as a matter of law to be awarded in the trial court's final judgment. CSA argues that the remoteness goes to whether this conduct of CSA proximately caused the damages awarded to TradeWinds Group by the trial court. Whether damages were proximately caused by the fraudulent conduct of a defendant is generally left to the finder of fact to determine. *Godfrey*, 165 N.C. App. at 79, 598 S.E.2d at 404. In the instant case, the trial court found that the damages awarded to TradeWinds Group resulted from the conduct of CSA. As noted in Section III D, the trial court had broad discretion to award damages to make the third-party plaintiff whole and to prevent CSA from profiting from its fraudulent conduct.

This argument is without merit.

### VII. Calculation of Damages

[5] In its fifth argument, CSA contends that the trial court's final judgment misapplies the law of North Carolina concerning the calculation of damages. We disagree.

CSA first argues that damages for the engine failures should have been limited to the time period of 90 days from the date that the engines were removed. The 90 day limitation is based upon a provision contained in the lease agreements. As previously noted in Section III E of this opinion, where there is a claim for fraudulent inducement, defenses based upon the terms of the contract will not bar the claim.

CSA also contends that the damages awarded were contrary to the North Carolina law of damages, which limit damages for loss of use of a business vehicle to the cost of renting a similar vehicle for a reasonable period of time, citing *Roberts v. Freight Carriers*, 273 N.C. 600, 160 S.E.2d 712 (1968). As noted previously in Section III D of this opinion, in cases of fraudulent inducement and unfair and deceptive trade practices, the courts seek to make the plaintiff whole and to prevent the defendant from profiting from its fraudulent conduct. This is not a case where a motor vehicle has been damaged and the plaintiff suffers loss of use as a result of the mere negligence of a defendant.

CSA next argues that damages for fraudulent inducement are measured from the date of the induced transaction and are measured as the difference between what was received and the value of what

was promised. This argument is directed at the damage claim of Coreolis. CSA contends that its damages are limited to the difference between what Coreolis paid Holdings for the stock in 2001 and the actual value of the stock absent the fraudulent misrepresentations of CSA. Instead, the trial court awarded Coreolis the amount of the settlement payment that it paid to Deutsche Bank. We again note that the trial court specifically rejected Coreolis's claims for more extensive damages based upon value of Airlines lost by Coreolis and Holdings. As noted in Section III D of this opinion, in this type of case, the courts seek to make the plaintiff whole and prevent the defendant from profiting from its fraudulent conduct.

This argument is without merit.

## VIII. Allegation of Inequitable Damages and Damages Unsupported by the Evidence

**[6]** In its sixth argument, CSA contends that the trial court erred in awarding damages that were both inequitable and unsupported by the evidence. We disagree.

CSA first argues that the trial court erred in failing to set aside the entry of default and in failing to set aside its July 2010 final judgment. As to the denial of the motion to set aside the entry of default, such a motion is addressed to the sound discretion of the trial court and will not be disturbed on appeal absent an abuse of discretion. *Bailey v. Gooding*, 60 N.C. App. 459, 463, 299 S.E.2d 267, 270 (1983). The trial court made the following finding with respect to CSA's motion to set aside the entry of default:

> . . . C-S Aviation could be more than merely negligent in its failure to respond to this Court's summons. Its failure to respond to the summons appears to be intentional. It may have relied on the belief that any judgment against it would be worthless. *Howell* confirms that a party "flout[ing] . . . with impunity" its obligation to respond to pleadings does not demonstrate the "good cause" required to convince a court to revisit its own default order. Additionally, C-S Aviation holds itself out to be a "sophisticated part[y]." Sophisticated business persons who are parties to a lawsuit understand that they disregard a court summons at their peril.

In light of this finding by the trial court, we can discern no abuse of discretion on the part of the trial court in denying the motion of CSA to set aside the entry of default.

TRADEWINDS AIRLINES, INC. v. C-S AVIATION SERVS.

[222 N.C. App. 834 (2012)]

As to the trial court's denial of CSA's motion to set aside its July 2010 final judgment, "[m]otions for relief from judgment are reviewed for an abuse of discretion." *Coastal Federal Credit Union v. Falls*, ____ N.C. App. ____, ____, 718 S.E.2d 192, 194 (2011). A motion to amend a judgment "is addressed to the sound legal discretion of the trial judge and his ruling thereon will not be disturbed absent a showing of abuse of that discretion." *Hardy v. Floyd*, 70 N.C. App. 608, 610, 320 S.E.2d 320, 322 (1984). CSA does not argue on appeal that the trial court abused its discretion, but simply asserts that default judgments are disfavored by the law. We note that the trial court did set aside the original default judgment in favor of Airlines and subsequently allowed discovery before conducting an extensive hearing on damages. We discern no abuse of discretion by the trial court in denying CSA's motion to set aside the July 2010 judgment.

CSA further argues that the damages were uncertain and inequitable and that the settlement between TradeWinds Group and Deutsche Bank bars the claims against CSA. We hold that these arguments are also without merit.

### IX.  Conclusion

The trial court had personal jurisdiction over CSA. The third-party complaint stated a claim for fraud and unfair and deceptive trade practices. The trial court's conclusions do not justify setting aside the default judgment. The trial court did not abuse its discretion in declining to set aside the default judgment.

AFFIRMED.

Judges McGEE and ERVIN concur.