Window World of Baton Rouge, LLC v. Window World, Inc.; Window World of St. Louis, Inc. v. Window World, Inc., 2018 NCBC 99.

STATE OF NORTH CAROLINA

WILKES COUNTY

WINDOW WORLD OF BATON ROUGE, LLC; WINDOW WORLD OF DALLAS, LLC; WINDOW WORLD OF TRI STATE AREA, LLC; and JAMES W. ROLAND,

          Plaintiffs,

  v.

WINDOW WORLD, INC.; WINDOW WORLD INTERNATIONAL, LLC; and TAMMY WHITWORTH,

          Defendants.

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
15 CVS 1

**ORDER AND OPINION ON WINDOW WORLD DEFENDANTS' MOTION TO COMPEL PLAINTIFFS TO PRODUCE DOCUMENTS SUPPORTING THEIR ALLEGED DAMAGES, MOTION TO COMPEL PLAINTIFFS AND/OR METRICWISE, INC. TO PRODUCE DOCUMENTS OR PROVIDE TESTIMONY, AND MOTION TO STRIKE PLAINTIFFS' OBJECTIONS TO THIRD-PARTY SUBPOENAS**

WILKES COUNTY

15 CVS 2

WINDOW WORLD OF ST. LOUIS, INC.; WINDOW WORLD OF KANSAS CITY, INC.; WINDOW WORLD OF SPRINGFIELD/PEORIA, INC.; JAMES T. LOMAX III; JONATHAN GILLETTE; B&E INVESTORS, INC.; WINDOW WORLD OF NORTH ATLANTA, INC.; WINDOW WORLD OF CENTRAL ALABAMA, INC.; MICHAEL EDWARDS; MELISSA EDWARDS; WINDOW WORLD OF CENTRAL PA, LLC; ANGELL P. WESNERFORD; KENNETH R. FORD, JR.; WORLD OF WINDOWS OF DENVER, LLC; RICK D. ROSE; CHRISTINA M. ROSE; WINDOW WORLD OF ROCKFORD, INC.; WINDOW WORLD OF JOLIET, INC.; SCOTT A. WILLIAMSON; JENNIFER L. WILLIAMSON; BRIAN

C. HOPKINS; WINDOW WORLD OF LEXINGTON, INC.; TOMMY R. JONES; JEREMY T. SHUMATE; WINDOW WORLD OF PHOENIX LLC; JAMES BALLARD; and TONI BALLARD,

Plaintiffs,

v.

WINDOW WORLD, INC.; WINDOW WORLD INTERNATIONAL, LLC; and TAMMY WHITWORTH, individually and as trustee of the Tammy E. Whitworth Revocable Trust,

Defendants.

1. **THIS MATTER** is before the Court upon the following motions in the above-captioned cases: (i) Defendants Window World, Inc. and Window World International, LLC's (together, the "Window World Defendants") Motion to Compel Plaintiffs to Produce Documents Supporting Their Alleged Damages (the "Damages Motion to Compel"); (ii) the Window World Defendants' Motion to Compel Plaintiffs and/or MetricWise, Inc. ("MetricWise") to Produce Documents or Provide Testimony (the "MetricWise Motion to Compel"); and (iii) the Window World Defendants' Motion to Strike Plaintiffs' Objections to Third-Party Subpoenas as those objections relate to MetricWise (the "Motion to Strike") (collectively, the "Motions").

2. By orders dated April 20, June 6, June 19, and July 25, 2018, the Court established briefing schedules on the Motions and scheduled a hearing on the Motions for August 22, 2018 (the "August 22 Hearing"), at which all parties, as well as non-

party MetricWise, were represented by counsel.[1]  After reviewing the Motions, the briefs in support of and in opposition to the Motions, the relevant materials associated with the Motions, and the arguments of counsel at the August 22 Hearing, the Court, in the exercise of its discretion and for good cause shown, hereby rules upon the Motions as set forth below.

> *Brooks, Pierce, McLendon, Humphrey & Leonard LLP, by Charles E. Coble, Robert J. King III, Benjamin R. Norman, Jeffrey E. Oleynik, and Andrew L. Rodenbough, and Keogh Cox & Wilson, Ltd., by Richard W. Wolff, John P. Wolff, III, and Virginia J. McLin, for Plaintiffs Window World of Baton Rouge, LLC, Window World of Dallas, LLC, Window World of Tri State Area LLC, James W. Roland, Window World of St. Louis, Inc., Window World of Kansas City, Inc., Window World of Springfield/Peoria, Inc., James T. Lomax III, Jonathan Gillette, B&E Investors, Inc., Window World of North Atlanta, Inc., Window World of Central Alabama, Inc., Michael Edwards, Melissa Edwards, Window World of Central PA, LLC, Angell P. Wesnerford, Kenneth R. Ford, Jr., World of Windows of Denver, LLC, Rick D. Rose, Christina M. Rose, Window World of Rockford, Inc., Window World of Joliet, Inc., Scott A. Williamson, Jennifer L. Williamson, Brian C. Hopkins, Window World of Lexington, Inc., Tommy R. Jones, Jeremy T. Shumate, Window World of Phoenix LLC, James Ballard, and Toni Ballard.*

> *Manning, Fulton & Skinner, P.A., by Michael T. Medford, Judson A. Welborn, Natalie M. Rice, and Jessica B. Vickers, and Laffey, Leitner & Goode LLC, by Mark M. Leitner, Joseph S. Goode, Jessica L. Farley, Sarah E. Thomas Pagels, and John W. Halpin, for Defendants Window World, Inc. and Window World International, LLC.*

---

[1]  At the August 22 Hearing, the Court also heard arguments on (i) the Window World Defendants' Motion to Compel Discovery from Non-Parties TriMark Solutions, LLC and Randy Goins, (ii) the Window World Defendants' Motion to Strike Plaintiffs' Objections to Third Party Subpoenas as those objections related to TriMark and Goins, (iii) Plaintiffs' Motion to Compel Production of Board Member Emails, (iv) Plaintiffs' Motion for Finding Waiver of the Attorney-Client Privilege and Work-Product Doctrine as to Certain Topics, and (v) Plaintiffs' Motion to Compel and Motion for Sanctions for Defendants' Wrongful Assertions of Privilege.  The Court resolved motions (i), (ii), and (iii) by orders dated August 28, 2018 and September 11, 2018.  The Court will resolve motions (iv) and (v) by separate order.

*Bell, Davis & Pitt, P.A., by Andrew A. Freeman and Alan M. Ruley, for Defendant Tammy Whitworth.*

Bledsoe, Chief Judge.

I.

PROCEDURAL AND FACTUAL BACKGROUND

3.    The pertinent procedural and factual background of these matters is set out more fully in *Window World of Baton Rouge, LLC v. Window World, Inc.*, 2017 NCBC LEXIS 60, at *4 (N.C. Super. Ct. July 12, 2017), *Window World of Baton Rouge, LLC v. Window World, Inc.*, 2016 NCBC LEXIS 82, at *5 (N.C. Super. Ct. Oct. 25, 2016), and *Window World of St. Louis, Inc. v. Window World, Inc.*, 2015 NCBC LEXIS 79, at *2 (N.C. Super. Ct. Aug. 10, 2015). The Court recites only those facts necessary for the determination of the Motions.

4.    Defendant Window World, Inc. ("Window World") is in the business of selling and installing windows, doors, and siding.  It operates several store locations and also franchises its business around the country.  Plaintiffs in these actions are various Window World franchisees.  According to Plaintiffs, Defendant Window World International, Inc. is an entity Defendant Tammy Whitworth created to receive Window World's intellectual property in a scheme to enrich herself and defraud Window World's creditors.

5.    The Window World Defendants assert that MetricWise, a customer relationship management software-as-a-service provider that furnishes sales and lead information for use by certain Plaintiffs, has information concerning Plaintiffs' businesses that is relevant to Plaintiffs' alleged damages.

6. Through both the Damages Motion to Compel and the MetricWise Motion to Compel, the Window World Defendants seek information regarding Plaintiffs' alleged damages. Specifically at issue are Plaintiffs' alleged money damages arising from the following causes of action: (i) breach of contract, (ii) breach of the covenant of good faith and fair dealing, (iii) fraud, (iv) negligent misrepresentation, (v) unfair and deceptive trade practices under N.C. Gen. Stat. § 75-1.1, and (vi) unjust enrichment. (Pls.' Third Am. Compl., ¶¶ 245–85, ECF No. 252 (15 CVS 1), ECF No. 275 (15 CVS 2).)

7. Plaintiffs seek damages under three theories. First, through their claims for breach of contract, breach of the covenant of good faith and fair dealing, and (in the alternative) unjust enrichment, Plaintiffs seek the amounts they allege they overpaid for windows, products, and services from vendors designated by the Window World Defendants (the "Overpayment Damages"). Second, through their claims for fraud, negligent misrepresentation, unfair trade practices, and unjust enrichment, Plaintiffs seek damages from the Window World Defendants corresponding to the amount of outstanding debt owed to the Window World Defendants and assumed by certain Plaintiffs when those Plaintiffs acquired various failing Window World franchises (the "Debt Damages"). Third, through their claims for fraud, negligent misrepresentation, and unjust enrichment, Plaintiffs seek damages based on their advertising expenditures, which Plaintiffs argue built value in the Window World trademarks and brand without benefit to Plaintiffs (the "Advertising Damages"). Notably, Plaintiffs assert that they are not seeking damages based on lost profits,

decreased sales, or diminution in the value of their businesses. (Pls.' Br. Opp. Defs.' Mot. Compel Pls. Produc. Financial, Sales, and Customer Data 3, ECF No. 457 (15 CVS 1), ECF No. 497 (15 CVS 2).)

8.     In February 2018, the Window World Defendants served MetricWise with a deposition subpoena under Rule 30(b)(6) of the North Carolina Rules of Civil Procedure and a subpoena duces tecum under Rule 45 (collectively, the "Subpoenas"). MetricWise objected to the Subpoenas on several grounds, including that producing the requested documents would impose an undue burden and that it is obligated by contract to protect Plaintiffs' confidential data of the sort sought. Plaintiffs also timely objected to the Subpoenas, arguing, in part, that the Subpoenas sought confidential and irrelevant business information and imposed an undue burden.

9.     The Window World Defendants subsequently filed the Motion to Strike, arguing that Plaintiffs' objections should be struck because (i) Plaintiffs did not have standing to assert the objections and (ii) Plaintiffs' objections based on the confidentiality of the subpoenaed information could readily be protected through the July 31, 2015 Protective Order previously entered in this case. By order dated June 19, 2018, the Court concluded that Plaintiffs had standing to challenge the MetricWise Subpoenas but deferred consideration of the Motion to Strike until consideration of the parties' additional briefing and arguments on various related motions to be heard at the August 22 Hearing.

10.     Through the Damages Motion to Compel, which was filed on May 4, 2018, the Window World Defendants seek responses to ninety-five separate requests for production of documents related to Plaintiffs' alleged damages.

11.     Through the subsequent MetricWise Motion to Compel, the Window World Defendants seek an order compelling Plaintiffs or (in the alternative) MetricWise "to respond to requests for information (via written discovery and/or a document and deposition subpoena) seeking documents supporting [Plaintiffs'] claimed damages[.]" (Window World Defs.' Mot. Compel Pls. and/or MetricWise Produc. Docs. or Provide Test. 2, ECF No. 538 (15 CVS 1), ECF No. 576 (15 CVS 2).)

12.     The Motions have been fully briefed and heard and are ripe for determination.

II.

LEGAL ANALYSIS

13.     Rule 26 of the North Carolina Rules of Civil Procedure provides that "[p]arties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action[.]"  N.C. R. Civ. P. 26(b)(1).  Under Rule 34, a "party may serve on any other party a request . . . to inspect and copy, test, or sample any . . . tangible things which constitute or contain matters within the scope of Rule 26(b) and which are in the possession, custody or control of the party upon whom the request is served[.]"  N.C. R. Civ. P. 34(a).

14.     "A fundamental requirement of Rule 26, and the focus of the Court's analysis here, is that the information sought to be discovered must be 'relevant' to the pending

action." *Wachovia Capital Partners, LLC v. Frank Harvey Inv. Family L.P.*, 2007 NCBC LEXIS 7, at *31 (N.C. Super. Ct. Mar. 5, 2007); *see Adams v. Lovette*, 105 N.C. App. 23, 29, 411 S.E.2d 620, 624, *aff'd*, 332 N.C. 659, 422 S.E.2d 575 (1992). "To be relevant for discovery purposes, the information sought need only be 'reasonably calculated' to lead to the discovery of relevant evidence admissible at trial." *Wachovia Capital Partners, LLC*, 2007 NCBC LEXIS 7, at *32 (citing N.C. R. Civ. P. 26(b)(1)). "[A] determination that information is relevant for discovery purposes does not necessarily mean that the information is admissible at trial. The latter determination is made according to Rule 401 of the Rules of Evidence." *Id.* at *31–32; *see also Shellhorn v. Brad Ragan, Inc.*, 38 N.C. App. 310, 314, 248 S.E.2d 103, 106 (1978).

A.    Damages Motion to Compel

15.    The Window World Defendants, through the Damages Motion to Compel, seek the following documents from Plaintiffs: (i) the corporate Plaintiffs' profit and loss statements (the "P&L Statements"); (ii) the corporate Plaintiffs' balance sheets (the "Balance Sheets"); (iii) the corporate Plaintiffs' tax returns (the "Corporate Returns"); and (iv) the individual Plaintiffs' tax returns (the "Individual Returns") (collectively, the "Accounting Records"). The Window World Defendants also seek production of certain advertising records and metrics (the "Advertising Records") as well as documents relating to the financial impact of the alleged overpricing on Plaintiffs' businesses, including information related to Plaintiffs' pricing, individual sales, cost of goods sold, and profitability (the "Lost Profit Records"). Finally, the

Window World Defendants seek Plaintiffs' transaction-by-transaction customer records, which they contend will enable them to show that favorable "C" Pricing was available to Plaintiffs on specific transactions (the "'C' Pricing Records").[2] According to the Window World Defendants, the documents sought through the Damages Motion to Compel are necessary for their damages expert, Catharine M. Lawton ("Lawton"), to analyze causation and damages in connection with Plaintiffs' claims for monetary relief.

16.   Plaintiffs argue in response that none of the documents the Window World Defendants seek are relevant to Plaintiffs' claims and, in particular, to Plaintiffs' theory of damages.  Plaintiffs contend that the documents at issue relate to Plaintiffs' business methods and financial success, which are only relevant to a lost profits theory, which Plaintiffs have not pleaded and expressly disavow.

17.   As a general matter, a party cannot withhold requested information "on grounds that it does not agree with [the requesting party's] theory of the case." *Ati Indus. Automation, Inc. v. Applied Robotics, Inc.*, No. 1:09CV471, 2014 U.S. Dist. LEXIS 101413, at *12 (M.D.N.C. July 25, 2014).  However, to determine whether requested information is reasonably calculated to lead to the discovery of evidence admissible at trial, a court may look to the nature of the underlying claims or defenses.  *See Shellhorn*, 38 N.C. App. at 315, 248 S.E.2d at 107 ("[D]iscovery as to

---

[2] The Court recognizes that there may be overlap between the Accounting Records, Advertising Records, Lost Profit Records, and "C" Pricing Records.  For purposes of this Order and Opinion, Lost Profit Records shall include only documents related to Plaintiffs' pricing, product profitability, and, together with "C" Pricing Records, Plaintiffs' individual transactions with Plaintiffs' customers.

matters occurring outside the period of limitations or at some other time not relevant to the case may be denied[.]"); *Brown v. Secor*, 2017 NCBC LEXIS 65, at *29 (N.C. Super. Ct. July 28, 2017) (denying motion to compel defendants' tax returns that predated events giving rise to the claim); *Lawrence v. UMLIC-Five Corp.*, 2007 NCBC LEXIS 30, at *32 (N.C. Super. Ct. Sept. 14, 2007) (denying motion to compel after analyzing viability of legal theories and noting requested information was "not relevant to the claims or defenses here, nor is it likely to lead to the discovery of admissible evidence"); *see also Wagoner v. Elkin City Sch. Bd. of Educ.*, 113 N.C. App. 579, 585, 440 S.E.2d 119, 123 (1994) (affirming denial of motion to compel and noting the plaintiff "failed to meet her burden of proving that her requests relate to information both relevant and necessary to her claims"); *Dworsky v. Travelers Ins. Co.*, 49 N.C. App. 446, 448, 271 S.E.2d 522, 524 (1980) (noting that a party seeking discovery is "not entitled to a fishing expedition to locate it"). Thus, a court necessarily may consider a party's proffered legal theories in determining the relevance of requested information under Rule 26.

18. Here, the Window World Defendants claim the information they seek is relevant to their purported defense to Plaintiffs' damages. With one limited exception,[3] the Window World Defendants do not claim these documents are relevant to any of their affirmative claims or defenses. Therefore, the Court must determine whether the requested information is reasonably calculated to lead to the discovery

---

[3] As discussed below, the Window World Defendants contend that that the Individual Returns are relevant to whether the "Large Franchisee Exemption" under federal franchise law excused the disclosure requirements upon which Plaintiffs rest their Section 75-1.1 claim.

of admissible evidence concerning Plaintiffs' damages. To that end, the Court necessarily must consider the theories of damages Plaintiffs advance and the defenses to those damages forecasted by the Window World Defendants. *See, e.g.*, *Lawrence*, 2007 NCBC LEXIS 30, at \*32 (denying motion to compel after analyzing legal theories).

1. Lost Profit Records

19. Notwithstanding the fact that Plaintiffs are not seeking lost profit damages, the Window World Defendants' expert, Lawton, avers that the Lost Profit Records are relevant to the Window World Defendants' defense because they are necessary to determine "the extent to which, if at all, Plaintiffs' sales and/or profits decreased as a result of the alleged overpayment." (Lawton Aff. ¶ 13, ECF No. 414.9 (15 CVS 1), ECF No. 454.9 (15 CVS 2).) The Window World Defendants' argument hinges on their contention that if the overcharge amounts paid by Plaintiffs were passed on to Plaintiffs' customers, Plaintiffs would not have suffered harm and their claims must therefore fail. More than that, the Window World Defendants contend that the Lost Profit Records are "likely to show that Plaintiffs' profits increased as a result of the alleged 'overcharging,'" as Plaintiffs may have disproportionately increased prices to customers when their own costs increased. (Window World Defs.' First Br. Supp. Mot. Compel Damages Docs. 8, ECF No. 495 (15 CVS 1), ECF No. 534 (15 CVS 2).)

20. The Window World Defendants rely on *People's Center, Inc. v. Anderson*, 32 N.C. App. 746, 233 S.E.2d 694 (1977), to argue that the Lost Profit Records are relevant to their purported defense to Plaintiffs' damages claim. The Court of

Appeals observed in *People's Center* that "a plaintiff cannot recover damages by proving only that the defendant has unlawfully violated some duty owing to the plaintiff, leaving the trier of fact to speculate as to the damages." *Id.* at 748, 233 S.E.2d at 696. Rather, a plaintiff "must go further and prove the nature and extent of the damage suffered by the plaintiff and that the breach of duty was the legal cause of that damage." *Id.*

21. Here, the Window World Defendants argue that "[t]here is harm in the form of lost 'value' or 'benefit of the bargain,' if any, only when Plaintiffs resell the goods in the ordinary course of their businesses." (Window World Defs.' Second Br. Supp. Mot. Compel Damages Docs. 5, ECF No. 522 (15 CVS 1), ECF No. 561 (15 CVS 2).) The Window World Defendants' assertion, however, and the underlying implication that Plaintiffs must show economic harm in subsequent and unrelated transactions with their customers, is incompatible with the Court of Appeals' caution in *People's Center* against allowing the recovery of damages based on mere speculation. *See People's Ctr., Inc.*, 32 N.C. App. at 748–49, 233 S.E.2d at 696 ("[N]o recovery is allowed when resort to speculation or conjecture is necessary to determine whether the damage resulted from the unlawful act of which complaint is made or from some other source.").

22. The United States Supreme Court has rejected the Window World Defendants' theory of defense—termed a "passing-on" defense—on similar facts in the context of antitrust claims. *See Hanover Shoe v. United Shoe Mach. Corp.*, 392

U.S. 481, 493 (1968). In holding that an intermediate buyer's damages are not dependent on downstream transactions, the Supreme Court reasoned as follows:

> Even if it could be shown that the buyer raised his price in response to, and in the amount of, the overcharge and that his margin of profit and total sales had not thereafter declined, there would remain the nearly insuperable difficulty of demonstrating that the particular plaintiff could not or would not have raised his prices absent the overcharge or maintained the higher price had the overcharge been discontinued. Since establishing the applicability of the passing-on defense would require a convincing showing of each of these virtually unascertainable figures, the task would normally prove insurmountable.

*Id.*; *see also Adams v. Mills*, 286 U.S. 397, 407 (1932) ("In contemplation of law the claim for damages arose at the time the extra charge was paid."); *S. Pac. Co. v. Darnell-Taenzer Lumber Co.*, 245 U.S. 531, 533–34 (1918) ("The plaintiffs suffered losses to the amount of the verdict when they paid."). Although Plaintiffs' action no longer contains antitrust claims,[4] the Supreme Court's rationale applies with equal force in the context presented here, and well-established North Carolina law supports the Court's conclusion that Plaintiffs should not be required to produce the Lost Profits Records.

23. Turning first to Plaintiffs' contract-based claims, the Court concludes that whether Plaintiffs passed the alleged overcharged amounts to their customers is not relevant to Plaintiffs' damages for breach of contract or breach of the duty of good faith and fair dealing. In an action for breach of contract, "the injured party is entitled as compensation therefor to be placed, insofar as this can be done by money, in the same position he would have occupied if *the contract* had been performed." *First*

---

[4] The Court dismissed Plaintiffs' claim under N.C. Gen. Stat. § 75-1 by order dated October 26, 2016.

*Union Nat'l Bank v. Naylor*, 102 N.C. App. 719, 725, 404 S.E.2d 161, 164 (1991) (emphasis added) (quoting *Perfecting Serv. Co. v. Product Dev. & Sales Co.*, 259 N.C. 400, 415, 131 S.E.2d 9, 21 (1963)).  Similarly, "[t]o state a claim for breach of the implied covenant of good faith and fair dealing, a plaintiff must plead that the party charged has taken action which injured the right of the plaintiff to receive the *benefits of the agreement* and deprived the plaintiff of the fruits of his bargain."  *Koch Measurement Devices, Inc. v. Armke*, 2013 NCBC LEXIS 45, at *15 (N.C. Super. Ct. Oct. 14, 2013) (emphasis added).

24.    The non-breaching party under either theory is entitled to damages based on his expectation interest, which is "measured by . . . the loss in the value to him of the other party's performance caused by [that party's] failure or deficiency[.]"  *First Union Nat'l Bank*, 102 N.C. App. at 725, 404 S.E.2d at 164 (citation omitted).  "Damages for a breach of contract are determined as of the time of the occurrence of the breach . . . .  Under this rule, later events . . . do not affect the measure of damages." 22 Am. Jur. 2d *Damages* § 95.

25.    In the agreements at issue here, the Window World Defendants allegedly promised, among other things, to secure for Plaintiffs superior wholesale pricing for the products Plaintiffs purchased, sold, and installed.  The relevant time for determining the position Plaintiffs "would have occupied" absent the alleged breach is the time of the Window World Defendants' alleged breach.[5]  Subsequent

---

[5] Plaintiffs specifically contend that the agreements were breached when the Window World Defendants "fail[ed] to secure superior wholesale pricing from suppliers, require[ed] Plaintiffs [to] purchase products and supplies at inflated prices from suppliers selected by WW, receiv[ed] undisclosed kickbacks or rebates on products and supplies purchased by

transactions between Plaintiffs and their customers are therefore irrelevant to the calculation of Overpayment Damages, regardless of Plaintiffs' profitability. *See S. Pac. Co.*, 245 U.S. at 533 ("The general tendency of the law, in regard to damages at least, is not to go beyond the first step."); *see also N. Ariz. Gas Serv., Inc. v. Petrolane Transp., Inc.*, 702 P.2d 696, 705 (Ariz. Ct. App. 1984) ("If [defendant] were permitted to assert this defense . . . it would be able to retain its overcharges with impunity. Since [plaintiff's] customers, the parties who ultimately absorbed at least some part of the damage, were not in privity with [defendant], they cannot sue on the contract. . . . [Plaintiff] is the only party that can recover the overcharge from [defendant], and it will be permitted to do so."). Thus, whether Plaintiffs passed the alleged overcharged amounts to their customers has no bearing on whether Plaintiffs were harmed by the Window World Defendants' conduct or the recoverable damages for such harm on either of these contract-based claims.

26. Although only argued through passing reference in briefing and at the August 22 Hearing, the Window World Defendants also suggest that the Lost Profit Records are relevant to Plaintiffs' duty to mitigate. The Court disagrees. "The general rule is that where there has been a breach of contract, the injured party must do what fair and reasonable prudence requires to save himself and reduce the damage[.]" *Turner Halsey Co. v. Lawrence Knitting Mills, Inc.*, 38 N.C. App. 569, 572, 248 S.E.2d 342, 344 (1978) (internal quotation marks omitted). However,

---

franchisees from designated suppliers, [and] provid[ed] undisclosed 'C' pricing to certain franchisees with lower levels of sales[.]" (Pls.' Third Am. Compl., ¶ 249, ECF No. 252 (15 CVS 1), ECF No. 275 (15 CVS 2).)

"[k]nowledge by the party complaining of a breach of a contract that he could by reasonable diligence have prevented or lessened the damage caused by another's wrongful act is essential." *Wilson v. Scarboro*, 171 N.C. 606, 608, 88 S.E. 872, 873 (1916). Here, the alleged breach, by its very nature, occurred without Plaintiffs' knowledge and thus without an opportunity for Plaintiffs to mitigate the purported breach's alleged effects. (*See* Pls.' Third Am. Compl., ¶ 249, ECF No. 252 (15 CVS 1), ECF No. 275 (15 CVS 2).) As such, Plaintiffs did not have a duty to mitigate, and thus discovery of Plaintiffs' efforts to mitigate is inapt on the record here. *See, e.g*, *Clayworth v. Pfizer, Inc.*, 233 P.3d 1066, 1085 (Cal. 2010) (excluding pass-on evidence as irrelevant to mitigation).

27. Turning next to Plaintiffs' fraud claim, the Window World Defendants contend that Plaintiffs will have failed to satisfy the proximate cause requirement for fraud if Plaintiffs "avoided adverse economic consequences from alleged fraudulent overcharges . . . by raising prices to their customers[.]" (Window World Defs.' First Br. Supp. Mot. Compel Damages Docs. 9.)

28. As with contract damages, fraud damages are intended to put a plaintiff in the "same position" he would have occupied had no fraud occurred. *Godfrey v. Res-Care, Inc.*, 165 N.C. App. 68, 79, 598 S.E.2d 396, 404 (2004) (citation omitted). "The measure of damages for fraud in the inducement of a contract is the difference between the value of what was received and the value of what was promised, and is potentially trebled by N.C.G.S. § 75-16." *Id.* (quoting *River Birch Assocs. v. City of*

*Raleigh*, 326 N.C. 100, 130, 388 S.E.2d 538, 556 (1990)).[6] In cases involving fraud, "courts are astute to give plaintiff a complete remedy and are careful to avoid situations in which the defendant may benefit from his fraud." *Tradewinds Airlines, Inc. v. C-S Aviation Servs.*, 222 N.C. App. 834, 841, 733 S.E.2d 162, 169 (2012) (quoting Charles E. Daye & Mark W. Morris, *North Carolina Law of Torts* § 27.36 (2d ed. 1999)).

29.    Plaintiffs' fraud claim is premised on the Window World Defendants' alleged promise to provide superior wholesale pricing to Plaintiffs while misrepresenting or concealing the superior pricing they offered to other franchisees. The difference between what was promised to Plaintiffs—superior wholesale pricing—and what was received—the pricing Plaintiffs actually received and paid—is the relevant inquiry as to alleged Overpayment Damages. As with contract damages, whether Plaintiffs passed the alleged overcharged amounts on to their customers is not relevant to Plaintiffs' damages for alleged fraud here. *See Adams*, 286 U.S. at 407 ("Neither the fact of subsequent reimbursement by the plaintiffs from funds of the shippers, nor the disposition which may hereafter be made of the damages recovered, is of any concern to the wrongdoers.").

30.    Examination of Plaintiffs' unfair and deceptive trade practices claim does not produce a different result. The conduct supporting that claim is nearly identical

---

[6] This standard is also applicable to negligent misrepresentation damages. *See Middleton v. Russell Grp.*, 126 N.C. App. 1, 29, 483 S.E.2d 727, 743 (1997) (noting that the standard measure of negligent misrepresentation damages is "the difference between the value for what he has received in the transaction and its purchase price" (quoting Restatement (Second) of Torts § 552B (Am. Law Inst. 1977)).

to the conduct alleged in support of Plaintiffs' contract and fraud claims. The damages analysis necessarily follows the same reasoning applied to those claims. The general principle that damages should "restore the victim to his original condition, to give back to him that which was lost as far as it may be done by compensation in money" also governs recovery under Section 75-1.1. *Bernard v. Cent. Carolina Truck Sales, Inc.*, 68 N.C. App. 228, 233, 314 S.E.2d 582, 585 (1984) (quoting *Phillips v. Chesson*, 231 N.C. 566, 571, 58 S.E.2d 343, 347 (1950)).[7] Therefore, the Lost Profit Records have no bearing on Plaintiffs' unfair and deceptive trade practices damages.

31. The Lost Profit Records also have no connection to Plaintiffs' alleged damages on their alternative claim for unjust enrichment. That claim seeks restitution for the wrongfully-collected and undisclosed kickbacks the Window World Defendants allegedly received. A claim for restitution "is not aimed at compensating the plaintiff, but at forcing the defendant to disgorge benefits that it would be unjust for him to keep." *Booher v. Frue*, 86 N.C. App. 390, 393, 358 S.E.2d 127, 129 (1987) (quoting D. Dobbs, *Law of Remedies* § 4.1, at 224 (1973)). Thus, whether Plaintiffs were able to avoid harm by passing alleged overcharged amounts on to their customers has no bearing on Plaintiffs' unjust enrichment damages.

32. Separate from the Court's conclusion regarding lack of relevance, the Court also concludes, in the exercise of its discretion, that producing the Lost Profit Records would impose an undue burden on Plaintiffs. According to Plaintiffs' counsel,

---

[7] Indeed, the North Carolina Pattern Jury Instructions on unfair and deceptive trade practices provide that where a business is suing in its capacity as a consumer, appropriate instructions as to damages include "the amount of price discrimination paid by the plaintiff" or "the excess price paid by the plaintiff." N.C.P.I. 813.80 – Civil at 2.

Plaintiffs, collectively, have sold over three million windows. Among other broad requests, the Window World Defendants seek "[a]ll documents and other information related to each Plaintiff licensee's sales order history for each product, including associated accessories, supplies, and service, including any documents or information containing estimated costs, gross margin analysis, and/or expense analysis for the period of time each Plaintiff has been in the Window World system." (Window World Defs.' Mot. Compel Pls. Produc. Docs. Supp. Alleged Damages Ex. D, at 26, ECF No. 414.4 (15 CVS 1), ECF No. 454.4 (15 CVS 2).) The Court concludes that producing purchase orders, invoices, sales contracts, and other documents on a transaction-by-transaction basis for millions of transactions would impose an undue burden on Plaintiffs, particularly in light of this information's lack of relevance to the claims and defenses asserted in this action.

33. Accordingly, for the reasons set forth above, the Court concludes, in the exercise of its discretion, that the Damages Motion to Compel should be denied as to the Lost Profits Records.

### 2. "C" Pricing Records

34. The Window World Defendants seek Plaintiffs' "C" Pricing Records (i.e., Plaintiffs' transaction-by-transaction customer records), which they contend will enable them to determine when "C" pricing was available to Plaintiffs. Plaintiffs allege that the Window World Defendants misrepresented pricing information concerning windows purchases from suppliers, including Associated Materials, Inc. ("AMI"), which served as Window World's exclusive supplier of windows after 2007.

(Pls.' Third Am. Compl. ¶¶ 25, 72, ECF No. 252 (15 CVS 1), ECF No. 275 (15 CVS 2).) According to Plaintiffs, the Window World Defendants represented that Plaintiffs would receive "best pricing" from AMI and that there were only two tiers of dealer pricing—"A" pricing and "B" pricing, with "B" pricing the more favorable. (Pls.' Third Am. Compl., ¶ 117.) Plaintiffs further allege that the Window World Defendants hid from them the existence of even more favorable "C" pricing, which was only offered to certain Window World franchisees and did not include Plaintiffs. (Pls.' Third Am. Compl., ¶ 130.) Plaintiffs assert that the Window World Defendants received "per-unit rebates," or kickbacks, "provided by the designated supplier," including AMI, "with respect to windows . . . and other products, as well as certain options to windows . . . including 'LowE' screens, interior laminates, grids, and colors." (Pls.' Third Am. Compl. ¶ 69.)

35. At the August 22 Hearing, the Window World Defendants contended that the more favorable "C" pricing was only available for windows sold with LowE and grids, each of which were available to Plaintiffs' customers. According to the Window World Defendants, Plaintiffs' "C" Pricing Records should be produced to permit the Window World Defendants to determine the specific transactions in which those options were sold and thus were eligible for "C" pricing.

36. As an initial matter, based on the parties' representations at the August 22 Hearing, it appears that AMI has produced records, reflected in a spreadsheet that has also been produced (the "AMI Spreadsheet"), that show the number of windows and options that each Plaintiff purchased in each order placed with AMI, including

whether Plaintiffs ordered the LowE and grid options. Accordingly, it appears to the Court that AMI has already produced the information that the Window World Defendants seek in the "C" Pricing Records.

37. In addition, based on the claims and defenses in this action, the Court concludes that Plaintiffs' window sales with the LowE and grid options are irrelevant. Rather, the Court concludes that the relevant inquiry is whether Plaintiffs purchased windows from AMI with the LowE and grid options, and, if so, on what occasions and in what quantities. In short, the relevant transactions here are those between Plaintiffs and dealers, such as AMI, and those between Plaintiffs and the Window World Defendants, not those between Plaintiffs and their customers.

38. Accordingly, based on the above, the Court concludes that the Window World Defendants' request for the "C" Pricing Records should be denied.

3. Accounting Records

39. The Window World Defendants contend that the Accounting Records are relevant to Plaintiffs' alleged Overpayment Damages, Debt Damages, and Advertising Damages. Plaintiffs appear to agree but have produced the Accounting Records with redactions. The Window World Defendants seek to have the records produced without redactions. Although the parties have not disclosed the specific redactions at issue, Plaintiffs' counsel advised at the August 22 Hearing that they were limited to a line item on the P&L Statements reflecting the attorneys' fees paid in this litigation. The Window World Defendants did not dispute this assertion. The Court concludes that the Window World Defendants have not developed a record

sufficient to compel Plaintiffs to disclose this information. Accordingly, the Court concludes, in the exercise of its discretion, that Plaintiffs should produce the Accounting Records but be permitted to redact the P&L Statements to conceal the amount of attorneys' fees paid in connection with this litigation.

### 4. Individual Returns

40. Plaintiffs' Section 75-1.1 claim rests, in part, on Plaintiffs' contention that the Window World Defendants engaged in unfair, deceptive, or fraudulent conduct by intentionally choosing not to provide Franchise Disclosure Documents to Plaintiffs despite a legal obligation to do so. (Window World Defs.' First Br. Supp. Mot. Compel Damages Docs. 3 n.1.) The Window World Defendants contend that the Individual Returns will show the individual Plaintiffs' net worth, and thus whether the "Large Franchisee Exemption" under federal franchise law excused the disclosure requirements on which the individual Plaintiffs rest their claim. *See* 16 C.F.R. § 436.8(a)(5)(ii) (creating exemption where "[t]he franchisee (or its parent or any affiliates) is an entity that has been in business for at least five years and has a net worth of at least $5,715,500."). The Window World Defendants, relying on Lawton, also argue that the Individual Returns will assist their expert in calculating Overpayment Damages. The Court disagrees with both arguments.

41. First, an individual's "net worth" is not readily determined from most individual tax returns, and the Window World Defendants have not offered evidence suggesting that the individual Plaintiffs' tax returns contain this information here. *In re Garth*, 214 S.W.3d 190, 193 (Tex. App. 2007) (holding trial court exceeded its

authority by ordering the production of income tax returns and noting "tax returns do not necessarily show an individual's net worth"). Further, the Window World Defendants have not demonstrated that the information they seek cannot be obtained by less burdensome and invasive means. *See* N.C. R. Civ. P. 26(b)(1a) (allowing court to limit discovery where information sought can be obtained "from some other source that is more convenient, less burdensome, or less expensive"). Indeed, at the August 22 Hearing, counsel indicated that the Window World Defendants recently served interrogatories seeking information related to Plaintiffs' net worth. Finally, Lawton's contention, without explanation, that the Individual Returns would assist her analysis of Overpayment Damages and "the extent to which, if at all, that the alleged overpayments resulted in lower sales and/or profits," (Lawton Aff. ¶¶ 26, 27), is stated in conclusory terms and in furtherance of a defense theory the Court has found inapposite. Accordingly, the Court concludes that the Damages Motion to Compel should be denied as to the Individual Returns.

### 5. Advertising Records

42. As noted above, Plaintiffs seek Advertising Damages in connection with their various claims. At the August 22 Hearing, counsel for the Window World Defendants narrowed the Advertising Records sought to information that evidences the value or benefit Plaintiffs received as a result of their advertising expenditures. Counsel further represented that the Advertising Records that the Window World Defendants seek through the Damages Motion to Compel are substantially the same documents that are sought through the MetricWise Motion to Compel, and that the

MetricWise Motion to Compel was an "alternative method" of obtaining the same documents. The parties further represented that during meet and confer negotiations leading to the Damages Motion to Compel, the Window World Defendants abandoned their demand for the Advertising Records, suggesting that their need for such Records is not substantial.

43. The Court concludes, based on the current record and for the reasons set forth below in the Court's analysis of the MetricWise Motion to Compel, that generating and producing the Advertising Records, other than the MetricWise reports described below, will impose an undue burden on Plaintiffs under the circumstances of this case. The Court therefore concludes, in the exercise of its discretion, that the Damages Motion to Compel should be denied to the extent it seeks Advertising Records other than the MetricWise data that are the subject of the MetricWise Motion to Compel, which is considered below.

B. MetricWise Motion to Compel

44. The Window World Defendants, through the MetricWise Motion to Compel, ask the Court to compel Plaintiffs or MetricWise to produce sales and lead data used by and compiled for certain Plaintiffs. The Window World Defendants specifically seek eleven reports, each of which can be generated through the MetricWise software used by Plaintiffs: (i) Sales Summary by Turn-in Date Reports; (ii) Sales Summary by Contract Data Reports; (iii) Sales per Lead Issue Reports; (iv) Leads Detail by Source Reports; (v) Leads Resulted Summary by Source Reports; (vi) Leads Set Summary by Source Reports; (vii) Ad Campaign Detail by Lead Source Reports; (viii)

Cost of Goods Sold Reports; (ix) Quote Summary by Turn-In Date Reports; (x) Quote Summary by Contract Date Reports; and (xi) Lead Conversions Reports (collectively, the "MetricWise Reports"). (Window World Defs.' Br. Supp. Mot. Compel Pls. and/or MetricWise Produc. Docs. or Provide Test. 5 n.2, ECF No. 540 (15 CVS 1), ECF No. 578 (15 CVS 2).) At the August 22 Hearing, counsel for the Window World Defendants clarified that they seek MetricWise Reports only for a small number of accounts over an eight-year period and narrowed the request to include only quarterly or annual Reports. Specifically, the Window World Defendants seek MetricWise Reports from January 2010 to the present (the "Eight-Year Period") for approximately eight accounts associated with stores owned by Plaintiffs James T. Lomax III, Jonathan Gillette, Michael Edwards, and Kenneth R. Ford, Jr. (the "Eight Accounts").[8]

45. The Window World Defendants assert that the MetricWise Reports are relevant in two respects: (i) as to whether Plaintiffs suffered economic harm as a result of alleged overcharges, and (ii) as to Plaintiffs' alleged Advertising Damages, contending that "[t]he MetricWise data is the primary source for determining the success of Plaintiffs' advertising campaigns."[9] (Window World Defs.' Br. Supp. Mot. Compel Pls. and/or MetricWise Produc. Docs. or Provide Test. 3.) The Window World

---

[8] On the current record, it is not clear which stores utilize the MetricWise software and whether each store owned by Plaintiffs James T. Lomax III, Jonathan Gillette, Michael Edwards, and Kenneth R. Ford, Jr. maintains a separate MetricWise account. To the extent that there are more than eight accounts, the Court may revisit its ruling for good cause shown.

[9] The Window World Defendants base their request for the Advertising Records in the Damages Motion to Compel on the same theories of relevance.

Defendants, however, do not delineate which MetricWise Reports correspond to which relevance theory.

46. In opposition to the MetricWise Motion to Compel, Plaintiffs and MetricWise argue that the MetricWise Reports are irrelevant and that generating the Reports would be unduly burdensome. In particular, Plaintiffs argue that they would never have made any advertising expenditures had they known of the Window World Defendants' alleged misrepresentations and omissions and thus should be entitled to recover all of the funds so expended. As to burden, Plaintiffs and MetricWise contend that because each MetricWise Report must be generated manually, the production burden is excessive, particularly as to the Ad Campaign Detail Report and the Sales Per Lead Issue Report, and especially in light of the needs of this case.

47. To begin, the Court has previously rejected the Window World Defendants' contention that they should be able to discover pricing, product profitability, and customer transaction information from Plaintiffs. Thus, to the extent the Window World Defendants seek MetricWise Reports or other Advertising Records related to Plaintiffs' pricing, profits, and margins on individual transactions with customers, the MetricWise Motion to Compel will be denied.

48. As to the MetricWise Reports relating to the success of Plaintiffs' advertising, Plaintiffs' Advertising Damages theory presumes both that the Window World Defendants did not provide any advertising benefit to Plaintiffs and that Plaintiffs' advertising expenditures benefited only the Window World Defendants. Unlike Plaintiffs' alleged Overpayment Damages, which do not require or permit an

assessment of lost profits and thus render the Lost Profits Records irrelevant, Plaintiff's Advertising Damages rest on factual presumptions that may or may not be true. The Court therefore concludes that the Window World Defendants should be afforded an opportunity to discover information relevant to Plaintiffs' factual presumptions underlying their claim for these damages. *See Friday Invs., LLC v. Bally Total Fitness of the Mid-Atl., Inc.*, 805 S.E.2d 664, 667 (N.C. 2017) ("The primary purpose of the discovery rules is to facilitate the disclosure prior to trial of any unprivileged information that is relevant and material to the lawsuit so as to permit the narrowing and sharpening of the basic issues and facts that will require trial." (quoting *Bumgarner v. Reneau*, 332 N.C. 624, 628, 422 S.E.2d 686, 688–89 (1992))).

49. Based on the parties' representations at the August 22 Hearing, it appears that Plaintiffs have produced advertising general ledgers, exemplars of advertisements, and correspondences with advertisers. These records show, among other things, the advertising expenses that Plaintiffs incurred. The documents do not, however, necessarily account for the value or benefit Plaintiffs received in exchange for their advertising expenditures.

50. Based on the record before the Court, it appears that certain MetricWise Reports relating to advertising likely provide evidence of the value or benefit many of the Plaintiffs received from their advertising expenditures.[10] The MetricWise

---

[10] As an example, Plaintiff Michael Edwards ("Edwards"), who owns Plaintiff Window World of Huntsville, Plaintiff Window World of North Atlanta, and Plaintiff Window World of Central Alabama, noted in his deposition that certain MetricWise Reports can be used to track the source of leads, which include television, newspaper, and internet advertisements.

Reports contain information, including leads and revenue information, which is potentially relevant to the value and effectiveness of Plaintiffs' advertising expenditures. The Court thus concludes, in the exercise of its discretion, that Plaintiffs should be required to produce a limited number of annual MetricWise Reports for the Eight-Year Period that relate to the effectiveness and value of Plaintiffs' advertising expenditures for the Eight Accounts the Window World Defendants have identified. Because the parties' briefs and arguments have not put the Court in a position to identify the specific MetricWise Reports that most directly relate to advertising effectiveness and value, the Court orders the Window World Defendants and Plaintiffs to meet and confer concerning a limited number of specific Reports that shall be produced, taking into account the burden the manual generation of such Reports shall have upon Plaintiffs, including, in particular, the burden the manual generation of the Ad Campaign Detail Report and the Sales Per Lead Issue Report may impose.

51. Because the MetricWise Reports the Window World Defendants seek from Plaintiffs are also sought from MetricWise, the Court concludes that MetricWise shall not be required to produce any Reports at this time. *See Arris Grp., Inc. v. Cyberpower Sys. (USA), Inc.*, 2017 NCBC LEXIS 58, at *8 (N.C. Super. Ct. July 11, 2017) ("[T]he fact of nonparty status may be considered by the court in weighing the burdens imposed in the circumstances." (quoting *Katz v. Batavia Marine & Sporting Supplies,*

---

(Edwards Dep. 226, ECF No. 538.14 (15 CVS 1), ECF No. 576.14 (15 CVS 2).) Edwards also acknowledged that certain MetricWise Reports can track the revenue generated by specific leads, and in making decisions as to advertising expenditures, one consideration is the cost-per-lead. (Edwards Dep. 524–25.)

*Inc.*, 984 F.2d 422, 424 (Fed. Cir. 1993)). The Court may revisit its ruling as to MetricWise for good cause shown, including in the event Plaintiffs are unable to produce the Reports that are the subject of this Order.

C. <u>Motion to Strike</u>

52. The Motion to Strike seeks to strike Plaintiffs' objections to the MetricWise Subpoenas on confidentiality grounds. Because the Court has denied the MetricWise Motion to Compel to the extent it seeks production from MetricWise, the Court concludes that the Motion to Strike is now moot. *See, e.g.*, *In re Hamilton*, 220 N.C. App. 350, 353, 725 S.E.2d 393, 396 (2012) (noting that an issue is moot whenever "the relief sought has been granted or that the questions originally in controversy between the parties are no longer at issue"). Should the Court later revisit and grant the MetricWise Motion to Compel as to MetricWise upon a showing of good cause, the Motion to Strike will no longer be moot and thus again be before the Court for decision. In such an event, the Court anticipates granting the Motion to Strike, in the exercise of its discretion, because Plaintiffs' confidential information can readily be protected through the Protective Order entered in this case on July 31, 2015.

III.

CONCLUSION

53. **WHEREFORE**, the Court, for the reasons stated herein and in the exercise of its discretion, hereby **ORDERS** as follows:

    a. The Window World Defendants' Damages Motion to Compel is **GRANTED IN PART** and **DENIED IN PART** as follows:

i. As to the Lost Profit Records, including but not limited to, Plaintiffs' records relating to pricing, product profitability, and individual transactions with Plaintiffs' customers, the Damages Motion to Compel is **DENIED**.

ii. As to the "C" Pricing Records, the Damages Motion to Compel is **DENIED**.

iii. As to the Accounting Records, the Damages Motion to Compel is **GRANTED**, and Plaintiffs shall produce Balance Sheets, P&L Statements, and Corporate Returns for the relevant period, redacted only to conceal on the P&L Statements the amount of attorneys' fees arising out of this litigation.

iv. As to the Individual Returns, the Damages Motion to Compel is **DENIED**.

v. As to the Advertising Records, the Damages Motion to Compel is **DENIED**.

b. The Window World Defendants' MetricWise Motion to Compel is **GRANTED IN PART** and **DENIED IN PART** as follows:

i. As to the MetricWise Reports relating to Plaintiffs' pricing, product profitability, and individual transactions with Plaintiffs' customers, the MetricWise Motion to Compel is **DENIED**.

ii. As to the MetricWise Reports relating to the value and effectiveness of Plaintiffs' advertising expenditures, the

MetricWise Motion to Compel is **GRANTED** as follows: (i) the Window World Defendants and Plaintiffs shall promptly meet and confer to agree on a limited number of specific MetricWise Reports that shall be produced, taking into account the burden the manual generation of such Reports will impose upon Plaintiffs, including, in particular, the burden the manual generation of the Ad Campaign Detail Report and the Sales Per Lead Issue Report may impose, and (ii) Plaintiffs shall generate and produce the agreed-upon Reports for the Eight Accounts during the Eight-Year Period the Window World Defendants have identified. Should the parties fail to reach an agreement on the Reports to be produced, the parties shall submit a joint status report to the Court no later than October 10, 2018 reflecting their competing positions and the reasons therefor.

iii. To the extent the MetricWise Motion to Compel seeks to compel production from MetricWise, the Motion is **DENIED**.

c. The Window World Defendants' Motion to Strike as to the MetricWise Subpoenas is **DENIED** as moot.

**SO ORDERED**, this the 26th day of September, 2018.

/s/ Louis A. Bledsoe, III
Louis A. Bledsoe, III
Chief Business Court Judge